[No. S063662. May 24, 2001.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
GARY LAFF et al., Real Parties in Interest.

## COUNSEL

Gil Garcetti, District Attorney, Brent Riggs, Natasha S. Cooper and Patrick D. Moran, Deputy District Attorneys, for Petitioner.

Dwyer, Daly, Brotzen & Bruno, John A. Daly, Toni Rae Bruno and Benjamin A. Brin for Respondent.

Law Offices of Richard A. Moss, Richard A. Moss and Tracy Green for Real Party in Interest Gary Laff.

Michael D. Chaney for Real Party in Interest Jerry Widawski.

## OPINION

**GEORGE, C. J.**—Pursuant to a warrant issued by respondent superior court, law enforcement authorities seized numerous documents from real

parties in interest Gary Laff and Jerry Widawski, who are attorneys suspected of criminal conduct. Real parties in interest (hereafter the attorneys) requested that the superior court conduct an in camera hearing to determine whether any of the seized documents were privileged. The court sealed the documents and refused to proceed with the hearing unless the People, represented by the district attorney's office, agreed to pay one-half the cost of the services of a special master appointed by the superior court to review the documents. The Court of Appeal denied the People's petition for writ of mandate, which sought to compel the superior court to conduct the hearing without requiring the People to contribute to the cost of a special master. The appellate court held that Code of Civil Procedure section 639, subdivision (a)(4),[1] which permits a compulsory reference when necessary for the information of the court in a special proceeding, authorizes the appointment of a referee to assist in ruling upon the claims of privilege asserted by the attorneys. The Court of Appeal further determined that the cost of the referee may be apportioned among the parties pursuant to section 645.1, subdivision (b).[2]

We granted review to decide whether the superior court properly refused to proceed with the hearing unless the People agreed to the appointment of a special master compensated in part by the People. In addition, we subsequently obtained supplemental briefing from the parties regarding the threshold issue whether a superior court is authorized to conduct such a hearing.

As we shall explain, we have reached the following conclusions with regard to the numerous issues presented. First, we conclude that the superior court has an obligation to determine claims of privilege regarding materials seized from the attorneys, whether or not the attorneys are suspected of criminal conduct, and that the court properly may conduct a hearing to resolve such claims. Second, although section 639 does not authorize a compulsory reference in a proceeding to determine whether documents seized from a criminal suspect are privileged (because such a proceeding is not the type of "special proceeding" to which section 639 applies), the superior court nonetheless possesses inherent authority to appoint a special

---

[1] Further undesignated statutory references are to the Code of Civil Procedure. Sections 638 through 645.1 were amended effective January 1, 2001, and the subdivision designations were changed. (Stats. 2000, ch. 644, § 1 et seq.) Citations herein are to the amended versions of these statutes.

[2] Section 645.1, subdivision (b), provides in part: "When a referee is appointed pursuant to Section 639, . . . the court may order the parties to pay the fees of referees who are not employees or officers of the court at the time of appointment, as fixed pursuant to Section 1023, in any manner determined by the court to be fair and reasonable, including an apportionment of the fees among the parties. For purposes of this section, the term 'parties' does not include parties' counsel."

master to assist it in examining such documents and ruling upon the claims of privilege. Third and finally, however, the superior court lacks either statutory or inherent power to require the parties to bear the cost of a special master's services in this context. Thus, the superior court erred in conditioning its willingness to determine the privilege claims asserted by the attorneys upon the People's agreement to pay for the services of a special master. We shall reverse the judgment of the Court of Appeal.

## I

The attorneys are suspected of possible automobile insurance fraud. They have not been charged with any crime, however, and no related criminal action is pending. At the request of the fraud divisions of the California Department of Insurance and the Los Angeles County District Attorney's Office, the superior court issued warrants authorizing the search of the homes and law offices of the attorneys and the seizure of specified categories of documents. When the warrants were executed, the attorneys each asserted that the materials seized by law enforcement authorities included information protected by the attorney-client privilege and the work-product doctrine. They requested that the search be conducted under the supervision of a special master, or, alternatively, that the seized materials be removed under seal. These requests were denied, and computers and files containing voluminous documents were examined and seized by investigators.

The superior court subsequently ordered that the Department of Insurance and the district attorney's office cease inspection and copying of the seized materials, that the attorneys be afforded an opportunity to examine and copy these items, and that the files remain under seal pending further order of the court. The attorneys filed a motion, captioned "In the Matter of the Search Warrant for the Premises of" the attorneys and others, requesting an in camera hearing at which the superior court would determine whether any of the documents were privileged. No opposing party was named in the motion, although the People, represented by the district attorney's office, appeared in the proceeding to oppose the claims of privilege asserted by the attorneys. The motion requested that the superior court appoint a special master to conduct the in camera inspection of the items and determine the applicability of any privilege. In support of this request, the attorneys stated that examining approximately 220 privileged files, including two computer databases, would be unduly burdensome for the court. A deputy district attorney agreed that a special master should be appointed for this purpose.

At the initial hearing on the attorneys' motion, the superior court asked the parties whether they would contribute to the cost of the services of a

special master. The attorneys agreed to pay one-half of this cost. The People, however, declined to share the cost of a special master, although a deputy district attorney indicated that guidance regarding this issue would be sought from management in the district attorney's office. Soon thereafter, the People and the attorneys agreed upon the selection of a special master to be appointed by the court. When the superior court again inquired whether the People would contribute to the special master's fees, however, the district attorney's office informed the court in writing that it was "not in a position to contribute to the payment of special master fees." The superior court then issued an order to show cause why the proceeding should not be summarily dismissed. The court observed that the parties previously had stated that approximately 15 to 20 packing boxes of documents must be reviewed, and that a qualified special master reasonably would devote 80 to 100 hours to the task, at an hourly rate of $130 to $150. Thus, the cost of a special master could reach $15,000. The superior court further noted that the record indicated law enforcement authorities already had allocated substantial expenditures of time and money to the investigation that had resulted in the seizure of the documents from the attorneys.

In further briefing, the People agreed that the court has inherent authority to appoint a special master to review the seized documents, and stated that the People never opposed the court's appointment of a special master for this purpose. The People asserted, however, that the cost of a special master should be paid from county general funds pursuant to Evidence Code sections 730 and 731, which authorize the appointment and payment of an expert selected by the court to testify at the trial of an action, if the court determines that expert evidence may be required by the court or a party.

At a subsequent hearing, the People contended that the cost of a special master, if one is appointed, should be paid from the operating budget of the superior court, because the hearing to determine whether the seized documents are privileged is a judicial proceeding and a judicial function. The superior court, however, concluded that the subject proceeding would be one in aid of a continuing investigation funded by the Fraud Division of the Department of Insurance, and that therefore the cost of the special master should be paid either by the People or by the Department of Insurance. Anticipating that the People would seek appellate review of its determination, the superior court ordered that all material seized from the attorneys remain sealed pending further order of the court. In a motion for reconsideration, the People urged the superior court immediately to unseal the seized materials and to consider the special master as either an expert witness or a quasi-judicial officer, in which case the fees of the special master would be paid from either county funds or the court's operating budget, respectively. The superior court denied the motion for reconsideration.

The People sought a writ of mandate to compel the superior court to conduct a hearing to determine the claims of privilege asserted by the attorneys, and to refrain from conditioning such a hearing upon the agreement of the parties to pay the cost of the hearing. Abandoning its principal legal argument asserted in the trial court, the People contended in the Court of Appeal that there is no explicit statutory authorization for referring the matter to a special master (i.e., that Evid. Code, §§ 730 and 731 do *not* apply), and that absent such authorization, the superior court had a duty to determine the attorneys' claims of privilege without requiring the parties to pay the cost of that determination. The superior court filed a return and answer asserting, among other things, that it has authority to appoint a referee and to allocate the cost of the reference among the parties pursuant to Code of Civil Procedure sections 639 and 645.1.

The Court of Appeal agreed with the superior court's assertion and held that the cost of a referee could be apportioned among the parties pursuant to section 645.1. We granted the People's petition for review to decide whether the superior court properly sealed the materials seized from the attorneys and refused to conduct the hearing unless the People agreed to contribute to the cost of a special master. Subsequently, we solicited supplemental briefing from the parties regarding the threshold issue whether the attorneys have a right to a judicial hearing to determine the applicability of the attorney-client privilege and work-product doctrine to the documents seized pursuant to the search warrant.

## II

 This dispute arose after the attorneys requested a judicial hearing to determine whether certain materials seized pursuant to a search warrant during a criminal investigation were privileged. The People contend that the attorneys have no right to such a hearing, and that neither the attorney-client privilege nor the work-product doctrine precludes disclosure of documents properly seized under a valid search warrant. The People urge us to disapprove the decision in *People v. Superior Court (Bauman & Rose)* (1995) 37 Cal.App.4th 1757 [44 Cal.Rptr.2d 734] (*Bauman & Rose*), which held that an attorney suspected of criminal conduct has a right to a judicial hearing to determine the applicability of such privileges to materials seized from the attorney.[3]

---

[3] Although the attorneys accurately observe that the People failed to challenge the validity of *Bauman & Rose, supra,* 37 Cal.App.4th 1757, in the lower courts, we exercise our discretion to resolve this issue, because it raises a pure question of law, and the issue whether the trial court possesses power to compel a reference in a *Bauman & Rose* hearing does not arise if the court lacks authority to conduct such a hearing. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 398, pp. 450-451; *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 5-7 [74 Cal.Rptr.2d 248, 954 P.2d 511].)

In considering the validity of *Bauman & Rose*, we begin with the general proposition that the custodian of materials protected by an evidentiary privilege owes a duty to the holder of the privilege to claim the privilege and to take actions necessary to ensure that the materials are not disclosed improperly. (E.g., Evid. Code, §§ 955 [attorney], 995 [physician], 1015 [psychotherapist]; see also Bus. & Prof. Code, § 6068, subd. (e) [attorney has duty to maintain client confidences].) Even if the custodian is suspected of a crime, when privileged materials in the custodian's possession are seized pursuant to a search warrant, he or she still owes a duty to take appropriate steps to protect the interest of the privilege holders in not disclosing the materials to law enforcement authorities or others. As explained by the court in *Bauman & Rose, supra,* 37 Cal.App.4th at page 1766: "The fact that the attorney is suspected of criminal activity does not lessen the client's interest in the confidentiality of his or her files, or obviate the privilege with respect to those files. . . . [A] suspect attorney no less than a nonsuspect attorney is entitled to assert the privilege on behalf of his or her client . . . ." Seeking a court order precluding such disclosure in these circumstances constitutes an appropriate and necessary exercise of the statutory and ethical obligations of the attorney.

Penal Code section 1536 authorizes the superior court to conduct a hearing to determine whether materials seized pursuant to a search warrant should be disclosed to the authorities. This statute states in relevant part: "All property or things taken on a warrant must be retained by the officer in his custody, *subject to the order of the court* to which he is required to return the proceedings before him, or of any other court in which the offense in respect to which the property or things taken is triable." (Italics added.) "[Penal Code] [s]ection 1536 was enacted in order to provide controls over those officials in possession of property seized pursuant to a search warrant, pending resolution of the disposition of the property, either through an order granting a motion for release of improperly seized materials or an order admitting the items seized into evidence." (*People v. Von Villas* (1992) 10 Cal.App.4th 201, 239 [13 Cal.Rptr.2d 62].) Law enforcement officials who seize property pursuant to a warrant issued by the court do so on behalf of the court, which has authority pursuant to Penal Code section 1536 to control the disposition of the property. (*People v. Superior Court* (1972) 28 Cal.App.3d 600, 607-608 [104 Cal.Rptr. 876].) This authority also arises from the court's inherent power to control and prevent the abuse of its process. (*Id.* at p. 607; *Ensoniq Corp. v. Superior Court* (1998) 65 Cal.App.4th 1537, 1547 [77 Cal.Rptr.2d 507].) Thus, even in the absence of statutory authorization, the superior court possesses the inherent power to conduct proceedings and issue orders regarding property seized from a criminal suspect pursuant to a warrant issued by the court.

 Examining seized documents, ruling upon claims of privilege, and precluding disclosure of privileged materials in the constructive custody of the superior court are well within the scope of the court's statutory and inherent authority. The seizure of files from an attorney's office often will result in the seizure of privileged documents. The court in *Bauman & Rose, supra,* 37 Cal.App.4th 1757, properly recognized that a judicial hearing is warranted in these circumstances, where a statutory privilege will be lost if the court fails to act.

The People raise three objections to the *Bauman & Rose* decision, but each lacks merit. First, the People assert that the attorney-client privilege precludes disclosure only during proceedings at which testimony can be compelled by law. The People rely upon the circumstance that statutory provisions regarding evidentiary privileges "apply in all proceedings" (Evid. Code, § 910), and the term "proceeding" is defined as "any action, hearing, investigation, inquest, or inquiry (whether conducted by a court, administrative agency, hearing officer, arbitrator, legislative body, or any other person authorized by law) in which, pursuant to law, testimony can be compelled to be given" (*id.,* § 901). Because execution of a search warrant and inspection of seized materials as part of a criminal investigation do not constitute such a proceeding, the People claim that the privilege cannot be invoked to prevent disclosure of documents pursuant to a search warrant.

The People's position is contrary to the governing statutes and existing case law. It is doubtful whether the statement in Evidence Code section 910—that statutory provisions regarding evidentiary privileges "apply in all proceedings"—was intended to *limit* the application of those provisions to such proceedings. The Law Revision Commission observed: "The protection afforded by a privilege would be insufficient if a court were the only place where the privilege could be invoked. Every *officer with power to issue subpoenas for investigative purposes*, every administrative agency, every local governing board, and many more persons could pry into the protected information if the privilege rules were applicable only in judicial proceedings." (Cal. Law Revision Com. com., reprinted at 29B pt. 3 West's Ann. Evid. Code (1995 ed.) foll. § 910, pp. 150-151, italics added.) An administrative subpoena, like a search warrant, may be issued absent the pendency of a proceeding at which testimony can be compelled. (See, e.g., *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 8 [56 Cal.Rptr.2d 706, 923 P.2d 1] (*Arnett*).)

In any event, neither the definition of "proceeding" in Evidence Code section 901, nor the provision in Evidence Code section 910 that evidentiary privileges "apply in all proceedings," necessarily establishes the scope of the attorney-client privilege. The definitions set forth in division 8 of the

Evidence Code (regarding evidentiary privileges) govern the construction of that division "[u]nless the provision or context otherwise requires." (Id., § 900, italics added.) In addition, the specified privileges apply in all proceedings "[e]xcept as otherwise provided by statute." (Id., § 910, italics added.) An attorney who received or made a communication subject to the attorney-client privilege "shall claim the privilege whenever he is present when the communication is sought to be disclosed." (Id., § 955, italics added.) The attorney has a duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." (Bus. & Prof. Code, § 6068, subd. (e).) These statutes do not limit the attorney's obligation in this regard to protecting client communications only in the course of proceedings at which testimony may be compelled by law.

Nor do the policies underlying the attorney-client privilege support the People's reading of the statutes. ■ "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system. The attorney-client privilege is a hallmark of our jurisprudence that furthers the public policy of ensuring ' "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." [Citation.]' [Citation.]" (People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc. (1999) 20 Cal.4th 1135, 1146 [86 Cal.Rptr.2d 816, 980 P.2d 371] [the privilege is relevant in determining whether law firm should be disqualified].) "It is no mere peripheral evidentiary rule, but is held vital to the effective administration of justice. [Citation.]" (Roberts v. City of Palmdale (1993) 5 Cal.4th 363, 380 [20 Cal.Rptr.2d 330, 853 P.2d 496].) ■ Permitting unfettered access to attorney-client communications, simply because there is no pending proceeding at which testimony can be compelled, would violate the policies supporting the privilege as well as the statutory and ethical obligations of attorneys to maintain client confidences.

Penal Code section 1524 also undermines the People's contention that the attorney-client privilege applies only in pending proceedings.[4] Pursuant to subdivision (c) of this statute, the superior court must follow certain procedures before issuing a search warrant for any documentary evidence in the possession of or under the control of a lawyer, physician, psychotherapist, or

---

[4]Penal Code section 1524, subdivision (c), states in relevant part:

"[N]o search warrant shall issue for any documentary evidence in the possession or under the control of any person, who is a lawyer as defined in Section 950 of the Evidence Code, a physician as defined in Section 990 of the Evidence Code, a psychotherapist as defined in Section 1010 of the Evidence Code, or a clergyman as defined in Section 1030 of the Evidence Code, and who is not reasonably suspected of engaging or having engaged in

clergyman who is not reasonably suspected of criminal activity. The statute requires that the court appoint a special master to accompany the individual serving the warrant. The specified professionals upon whom the warrant is served are authorized to state to the special master that particular items should not be disclosed, and the special master then must seal such items and take them to a court for a hearing, at which the individual searched "shall be entitled to raise . . . a claim that the item or items are *privileged,* as provided by law." (Pen. Code, § 1524, subd. (c)(2), italics added.) These passages clearly authorize the specified professionals to raise at such a hearing privileges set forth in division 8 of the Evidence Code and to seek to preclude disclosure of the items to the authorities. Because a search warrant often is issued before any criminal proceeding is commenced, there is no merit in the People's claim that the attorney-client privilege precludes disclosure of client confidences only in the course of such a proceeding.

As the People concede, existing authority—in addition to *Bauman & Rose, supra,* 37 Cal.App.4th 1757—supports the view that even if no criminal proceeding is pending, materials protected by the attorney-client privilege are not subject to disclosure pursuant to a search warrant. (*Gordon v. Superior Court* (1997) 55 Cal.App.4th 1546, 1557 [65 Cal.Rptr.2d 53]; *PSC Geothermal Services Co. v. Superior Court* (1994) 25 Cal.App.4th 1697, 1712 [31 Cal.Rptr.2d 213]; *Geilim v. Superior Court* (1991) 234 Cal.App.3d 166, 171-173 [285 Cal.Rptr. 602].) We agree with these decisions and conclude that an attorney suspected of criminal conduct properly may, before any charges have been filed, assert the attorney-client privilege with regard to materials seized from the attorney pursuant to a search warrant.

Second, the People attack the *Bauman & Rose* decision on the ground that, whatever the rule with regard to the *attorney-client privilege,* the *work-product doctrine* has no application to documents seized pursuant to a search

criminal activity related to the documentary evidence for which a warrant is requested unless the following procedure has been complied with:

"(1) At the time of the issuance of the warrant the court shall appoint a special master . . . to accompany the person who will serve the warrant. Upon service of the warrant, the special master shall inform the party served of the specific items being sought and that the party shall have the opportunity to provide the items requested. If the party, in the judgment of the special master, fails to provide the items requested, the special master shall conduct a search for the items in the areas indicated in the search warrant.

"(2) If the party who has been served states that an item or items should not be disclosed, they shall be sealed by the special master and taken to court for a hearing.

"At the hearing the party searched shall be entitled to raise any issues that may be raised pursuant to Section 1538.5 as well as a claim that the item or items are privileged, as provided by law. The hearing shall be held in the superior court. The court shall provide sufficient time for the parties to obtain counsel and make any motions or present any evidence. The hearing shall be held within three days of the service of the warrant unless the court makes a finding that the expedited hearing is impracticable. In that case the matter shall be heard at the earliest possible time."

warrant. The People claim that the doctrine precludes disclosure of attorney work product only during *discovery*, and that a search warrant is not a tool of discovery. Therefore, according to the People, a hearing to determine the applicability of the work-product doctrine would serve no purpose. Contrary to the People's position, however, the work-product doctrine applies outside the context of formal discovery between parties to a pending action.

The work-product doctrine is codified in section 2018. Subdivision (a) of this statute provides: "It is the policy of the state to: (1) preserve the rights of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of those cases; and (2) to prevent attorneys from taking undue advantage of their adversary's industry and efforts." Pursuant to subdivision (c) of section 2018, "[a]ny writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories shall not be *discoverable* under any circumstances." (Italics added.) The work-product doctrine expressly is made applicable to criminal cases by Penal Code section 1054.6, which states: "Neither the defendant nor the prosecuting attorney is required to disclose any materials or information which are work product as defined in subdivision (c) of Section 2018 of the Code of Civil Procedure, or which are privileged pursuant to an express statutory provision, or are privileged as provided by the Constitution of the United States." (See *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 380-382 [285 Cal.Rptr. 231, 815 P.2d 304]; *People v. Collie* (1981) 30 Cal.3d 43, 59 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776] [holding, before enactment of Penal Code section 1054.6, that the work-product doctrine applies in criminal cases].)

In support of the claim that the work-product doctrine applies only during formal discovery, the People rely upon *Arnett, supra,* 14 Cal.4th 4, which interpreted a statute specifying that the proceedings and records of hospital peer review committees shall not be "subject to discovery." (Evid. Code, § 1157, subd. (a).) Our decision in *Arnett* concluded that the term "discovery" in this particular statute must be given "its well-established legal meaning of a formal exchange of evidentiary information between parties to a pending action . . . ." (14 Cal.4th at p. 24.) Thus, we held that a subpoena issued by an administrative agency for purely investigative purposes, before any action had been filed, did not constitute discovery within the meaning of Evidence Code section 1157. The People contend that, by analogy, a search warrant authorizing seizure of materials from a criminal suspect before charges have been filed does not constitute discovery for purposes of Code of Civil Procedure section 2018, which provides that attorney work product shall not be *discoverable.*

Unlike the statute considered in *Arnett*, however, section 2018 expressly is intended to restate the common law regarding attorney work product. (*Id.*, subd. (d).) In order to further the policies underlying the doctrine, several decisions have applied the work-product doctrine to preclude disclosure of attorney work product in situations other than formal discovery between parties to a pending action. For example, in *People v. Coddington* (2000) 23 Cal.4th 529 [97 Cal.Rptr.2d 528, 2 P.3d 1081], we held that a prosecutor violated the work-product doctrine by using at trial information he had obtained informally through social contacts and an examination of a jail sign-in sheet. Our opinion states it was irrelevant that the prosecutor did not seek or obtain the information through discovery. (*Id.* at p. 606; see also *County of Los Angeles v. Superior Court* (1990) 222 Cal.App.3d 647, 654-658 [271 Cal.Rptr. 698] [opposing party cannot retain adversary's former expert witness without violating work-product doctrine]; *Rodriguez v. Mc-Donnell Douglas Corp.* (1978) 87 Cal.App.3d 626, 648-649 [151 Cal.Rptr. 399] [work-product doctrine is applicable at trial as well as in pretrial discovery proceedings]; 70 Ops.Cal.Atty.Gen. 28, 33-35 (1987) [work-product doctrine applies in grand jury proceedings]; accord, *In re Grand Jury Proceedings* (8th Cir. 1973) 473 F.2d 840, 842-848 [the need for protection of attorney work product outweighs the public interest in the search for the truth at a grand jury proceeding].)

*Bauman & Rose, supra,* 37 Cal.App.4th 1757, is not the only California decision holding that materials seized pursuant to a search warrant, as part of a criminal investigation, are protected by the work-product doctrine. In *PSC Geothermal Services Co. v. Superior Court, supra,* 25 Cal.App.4th 1697, the Court of Appeal stated: "[T]he court should be able to control the disclosure of potentially privileged materials sought to be discovered by the prosecution through execution of a search warrant. The attorney-client and work-product privileges should not be lost simply because the prosecution seeks discovery through execution of a search warrant rather than through a discovery motion." (*Id.* at p. 1712.)[5] Federal decisions are in accord. (E.g., *Upjohn Co. v. United States* (1981) 449 U.S. 383, 397-400 [101 S.Ct. 677, 686-688, 66 L.Ed.2d 584] [attorney-client privilege and work-product doctrine apply to summonses issued by IRS as part of tax investigation];

---

[5]In *People ex rel. Lockyer v. Superior Court (Pfingst)* (2000) 83 Cal.App.4th 387 [99 Cal.Rptr.2d 646], the Court of Appeal retreated from the position it adopted in *PSC Geothermal Services Co. v. Superior Court, supra,* 25 Cal.App.4th 1697, and determined that protection for attorney work product is available only "to prevent disclosure after a case is pending and would not be available . . . to preclude the [Attorney General] from initially reviewing evidence that is constitutionally seized under a properly issued warrant. [Citation.]" (*Pfingst, supra,* 83 Cal.App.4th at pp. 406-407.) In making this determination, the Court of Appeal relied upon our construction of the term "discovery" in *Arnett, supra,* 14 Cal.4th 4. As we have explained, however, notwithstanding our decision in *Arnett*, the work-product doctrine is not limited to formal discovery. To the extent *Pfingst, supra,* 83 Cal.App.4th 387, is inconsistent with the views expressed herein, it is disapproved.

*Klitzman, Klitzman and Gallagher v. Krut* (3d Cir. 1984) 744 F.2d 955, 961 [same, with regard to search warrants executed by United States Postal Service in connection with pending grand jury proceedings].) We agree with these decisions and reject the People's assertion that the work-product doctrine cannot preclude disclosure of materials seized pursuant to a search warrant as part of a criminal investigation.

A determination that the attorney-client privilege and work-product doctrine protect materials from disclosure only during a pending proceeding or in formal discovery would be inconsistent with the purpose of and policies underlying these privileges. If law enforcement authorities were permitted to seize and inspect privileged items that would be protected against discovery in a criminal proceeding, the prosecution simply could delay filing charges until a search warrant for those items is executed. Although the prosecution could not introduce the privileged information discovered by such a search as evidence in the proceeding, it nevertheless could use the information in preparing its case and thereby gain an unfair advantage over individuals intended to be protected by the privilege. Just as importantly, mere disclosure of client confidences and attorney work product to third parties, in itself, would violate these privileges. (*Geilim v. Superior Court, supra,* 234 Cal.App.3d at p. 176.) We find no indication in the statutes or case law that the Legislature intended such a result.[6]

Third, the People challenge the validity of *Bauman & Rose* by claiming that, even if the attorney-client privilege and work-product doctrine apply before charges have been filed, the superior court lacks authority to conduct a hearing to decide whether materials seized from an attorney suspected of criminal activity are protected against disclosure. The People rely upon the circumstance that Penal Code section 1524, subdivision (c), authorizes such a hearing only when materials are seized from privilege holders who are not suspects. According to the People, the Legislature thus intended that only individuals not suspected of criminal conduct have a right to such a hearing. The People further assert that if courts always have had the power to conduct a privilege hearing before charges are filed, there would have been no need for the Legislature to confer a statutory right to such a hearing.

---

[6]Of course, if a privilege is inapplicable, for example under the crime/fraud exception to the attorney-client privilege (Evid. Code, § 956), disclosure of materials seized pursuant to a search warrant would be permissible. Contrary to the People's assertion, the probable cause showing necessary to obtain a search warrant authorizing the seizure of an attorney's case files does not necessarily establish a prima facie case that the attorney's clients sought or obtained legal services to enable or aid the commitment of a crime or fraud. (*State Farm Fire & Casualty Co. v. Superior Court* (1997) 54 Cal.App.4th 625, 644-645 [62 Cal.Rptr.2d 834], and cases cited therein; see *Wells Fargo Bank v. Superior Court* (2000) 22 Cal.4th 201, 213-214, fn. 4 [91 Cal.Rptr.2d 716, 990 P.2d 591].) Thus, one of the purposes of the *Bauman & Rose* hearing is to determine whether such an exception defeats a claim that the documents are privileged.

Contrary to the People's position, Penal Code section 1524 does not reflect a legislative intent to authorize privilege hearings only for individuals not suspected of criminal activity. Subdivisions (c), (d), and (e) of Penal Code section 1524 contain detailed provisions concerning the appointment and duties of a special master who must accompany the individual serving the warrant, supervise and/or conduct the search, and seal items that the party who has been served believes should not be disclosed. Subdivision (c)(2) states that the special master must take the sealed items to the court for a hearing. This subdivision not only provides for a privilege hearing but also (1) imposes a duty upon the special master to take the sealed items to the court; (2) authorizes the party served with the warrant to raise at the hearing issues pursuant to Penal Code section 1538.5, a statute ordinarily available only to a *defendant* in a criminal proceeding (*id.*, subd. (a)(1)); (3) requires that the parties be given sufficient time to obtain counsel, make motions, and present evidence; and (4) requires an expedited hearing unless impracticable. Thus, the reference in Penal Code section 1524 to a superior court hearing does not reflect a legislative assumption or intention that the court otherwise lacks authority to conduct a hearing regarding privilege issues. Instead the statute sets forth additional rights and procedures that apply at a hearing involving specified individuals who are not suspected of criminal activity. Nothing in Penal Code section 1524 purports to restrict a court's authority to adjudicate claims of privilege or work product raised by attorneys who are suspects.[7]

Accordingly, we conclude that the court in *Bauman & Rose* correctly held that the superior court has an obligation to consider and determine claims that materials seized pursuant to a search warrant, from attorneys suspected of criminal activity and before charges have been filed, are protected by the attorney-client privilege or work-product doctrine and thus should not be inspected by or disclosed to law enforcement authorities.[8]

---

[7]In a hearing conducted pursuant to Penal Code section 1524, subdivision (c), the court is authorized to require disclosure, in chambers, of materials claimed to be privileged, if the court determines that there is no other feasible means of ruling upon the validity of the claim. (Evid. Code, § 915.) This authorization constitutes an exception to the general rule prohibiting the disclosure of information, claimed to be privileged, in order to rule upon the claim of privilege. (*Id.*, subd. (a).) In the present case, the attorneys do not contend that the superior court lacks authority to review the seized materials in ruling upon their claims of attorney-client privilege, and we have no occasion to consider the application of Evidence Code section 915 to *Bauman & Rose* hearings.

[8]The People assert that the superior court should not have sealed the documents seized from the attorneys, and instead should have imposed a nondisclosure order but allowed the People access to the documents so that the criminal investigation could proceed unhampered by the litigation concerning privilege. As explained above, however, permitting the People to have access to the documents before the privilege claims are resolved would violate the privilege

## III

 We next consider whether the superior court possesses authority, without the consent of the parties, to order that the review of seized materials and the determination of privilege claims in a *Bauman & Rose* proceeding be referred to a special master for a report and recommendation.

 The California Constitution imposes limitations upon the power of nonjudicial officers to exercise judicial functions. "The judicial power of this State is vested in the Supreme Court, courts of appeal, superior courts, and municipal courts." (Cal. Const., art. VI, § 1.) To avoid an unconstitutional delegation of judicial authority, the Constitution requires the stipulation of the parties before a trial court may refer a cause to be tried by a referee. (*Id.*, § 21; *In re Edgar M.* (1975) 14 Cal.3d 727, 732 [122 Cal.Rptr. 574, 537 P.2d 406].) Such a referral of the entire case, with the consent of the parties, is known as a general reference and results in a binding determination by the referee. (*In re Edgar M., supra,* 14 Cal.3d at p. 734; see § 638.)[9]

In addition, the Constitution specifies that "[t]he Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." (Cal. Const., art. VI, § 22.) Article VI, section 22, was intended to retain constitutional authorization for existing statutes under which court commissioners had exercised their powers (see Code Civ. Proc., § 259), and also to authorize expressly the previously implicit power under article VI for the appointment by trial courts of masters and referees to assist in the factfinding process. (*In re Edgar M., supra,* 14 Cal.3d at pp. 733-734.) Masters and referees perform subordinate judicial duties only if their findings and recommendations are advisory and not binding until adopted by the court. (*In re Perrone C.* (1979) 26 Cal.3d 49, 54-55 [160 Cal.Rptr. 704, 603 P.2d 1300]; *Aetna Life Ins. Co. v. Superior Court* (1986) 182 Cal.App.3d 431, 436 [227 Cal.Rptr. 460].) The court independently must review the referee's proposed findings and conclusions. (*Jovine v. FHP, Inc.* (1998) 64 Cal.App.4th 1506, 1522 [76 Cal.Rptr.2d 322].) If authorized by law, a superior court's referral of a particular aspect of a judicial proceeding to a special master or referee to render advisory findings and recommendations may be made with or without the consent of the parties and is known as a special reference. (*Ibid.*)

---

and defeat the purpose of the hearing. The superior court did not err in ordering that the documents seized from the attorneys remain under seal pending resolution of their claims.

[9]Although the People initially agreed to the appointment of a special master in the trial court, the People apparently contemplated that the special master would make nonbinding recommendations. In addition, the People's agreement ultimately became conditioned upon the People's not being liable for the cost of the special master—a condition the superior court refused to accept. Thus, the People did not stipulate to a general reference.

Neither the decision in *Bauman & Rose, supra,* 37 Cal.App.4th 1757, nor Penal Code section 1524 expressly addresses the question whether a trial court is authorized to appoint a special master or referee to review seized documents as to which a claim of privilege has been asserted. The attorneys and the superior court assert that the Court of Appeal correctly concluded that a special reference of the privilege issues raised in a *Bauman & Rose* hearing is authorized by Code of Civil Procedure section 639. The People, on the other hand, contend that the superior court lacks the authority to compel the parties to submit any part of the proceeding to a special master, because no statute authorizes a compulsory reference in this context.[10] We shall consider these contentions in turn.

A

The Court of Appeal held that the superior court possesses authority to compel a special reference in a *Bauman & Rose* hearing pursuant to section 639, subdivision (a)(4), which states: "When the parties do not consent, the court may, upon the written motion of any party, or of its own motion, appoint a referee . . . [¶] . . . [¶] . . . [w]hen it is necessary for the information of the court in a special proceeding."[11] The Court of Appeal reasoned that a *Bauman & Rose* hearing is neither a criminal action nor a

---

[10]We agree with the attorneys that the People waived the contention that the superior court lacks authority to appoint a special master. In the trial court the People on several occasions expressly agreed that the appointment of a special master is within the inherent power of the court and/or is authorized by statute. A party's express agreement regarding the appropriate procedure to be followed in the trial court may result in a waiver of the right on appeal to claim that the procedure was erroneous. (9 Witkin, Cal. Procedure, *supra,* Appeal, §§ 388, 389, pp. 439-440.) Despite the People's waiver, however, because this issue raises a pure question of law that was briefed fully and decided in the Court of Appeal, and because the superior court's authority to compel a reference is a prerequisite to any authority it may have to apportion the cost of the referee among the parties, we exercise our discretion to determine whether this legal issue was resolved correctly by the Court of Appeal. (See fn. 3, *ante.*)

[11]Section 639, subdivision (a), states in full:

"When the parties do not consent, the court may, upon the written motion of any party, or of its own motion, appoint a referee in the following cases:

"(1) When the trial of an issue of fact requires the examination of a long account on either side; in which case the referees may be directed to hear and decide the whole issue, or report upon any specific question of fact involved therein.

"(2) When the taking of an account is necessary for the information of the court before judgment, or for carrying a judgment or order into effect.

"(3) When a question of fact, other than upon the pleadings, arises upon motion or otherwise, in any stage of the action.

"(4) When it is necessary for the information of the court in a special proceeding.

"(5) When the court in any pending action determines that it is necessary for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon."

civil action, as those terms are defined in the Code of Civil Procedure, and thus by definition the hearing is a special proceeding within the meaning of section 639. In evaluating the Court of Appeal's conclusion, we shall ascertain whether a *Bauman & Rose* hearing is a special proceeding, and, if so, whether it is the type of special proceeding in which section 639 authorizes a special reference.

### 1.

The Code of Civil Procedure classifies the remedies that may be obtained in the courts. "Judicial remedies" are defined as those remedies administered by the courts of justice or judicial officers empowered for that purpose by the Constitution and statutes. (§ 20.) Judicial remedies are divided into two classes: actions and special proceedings. (§ 21.) "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (§ 22.) "Every other remedy is a special proceeding." (§ 23.)

Actions are classified as either civil or criminal. (Code Civ. Proc., § 24.) "A civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." (*Id.*, § 30.) A criminal action is "[t]he proceeding by which a party charged with a public offense is accused and brought to trial and punishment . . . ." (Pen. Code, § 683; see Code Civ. Proc., § 31 [definition of criminal action].) "A criminal action is prosecuted in the name of the people of the State of California, as a party, against the person charged with the offense." (Pen. Code, § 684.)

The People acknowledge that no criminal action, as defined in Penal Code section 683, has been initiated against the attorneys. The *Bauman & Rose* hearing may not be characterized properly as a criminal action, because it is not a proceeding in which any party has been charged with a public offense. Nor is the hearing *related* to any pending criminal action so as to warrant treating it as an integral part of such an action. In *Bravo v. Cabell* (1974) 11 Cal.3d 834 [114 Cal.Rptr. 618, 523 P.2d 658], we held that special proceedings ordinarily regarded as civil in nature (petitions for prerogative writs) should be deemed a part of the criminal action to which they relate, because the proceedings "initiate no new controversy but relate only to the action below." (*Id.* at p. 840.) Similarly, the Court of Appeal subsequently held that a motion for disclosure of a peace officer's personnel records (Evid. Code, § 1043) should not be deemed a special proceeding if it is an integral part of a pending action. (*Avelar v. Superior Court* (1992) 7 Cal.App.4th 1270,

1275-1277 [9 Cal.Rptr.2d 536].) When no criminal action has been filed, however, a motion for the return of seized property is deemed to be a special proceeding, even though it may be considered part of a criminal action if such an action is pending. (*Ensoniq Corp. v. Superior Court, supra,* 65 Cal.App.4th 1537, 1547.) Thus, although the pendency of a related criminal action may warrant classifying a special proceeding as a part of the criminal action, the mere circumstance that a criminal action *may* be filed against the attorneys at some point in the future is insufficient to justify categorizing the *Bauman & Rose* hearing as a criminal action or as an integral part of such an action.

The decision in *People v. Superior Court (Memorial Medical Center)* (1991) 234 Cal.App.3d 363, 387-389 [286 Cal.Rptr. 478] (*Memorial Medical Center*) does not support a contrary conclusion. That case concerned the privilege not to disclose records of a hospital peer review committee. (Evid. Code, § 1157.) The Court of Appeal held that a proceeding pursuant to Penal Code section 1524, subdivision (c), to determine the applicability of the privilege before criminal charges had been filed against a physician, was a "criminal action" within the meaning of Evidence Code section 1157, subdivision (e). The latter statute specifies that the privilege for the records of a hospital peer review committee does not apply in a criminal action. The court acknowledged that a strict reading of the definition of "criminal action" in Penal Code section 683 "would seem to exclude special proceedings of a criminal nature in which a defendant has not yet been charged." (*Memorial Medical Center, supra,* 234 Cal.App.3d at p. 388.) Nevertheless, the Court of Appeal determined that excluding a proceeding under Penal Code section 1524 from the definition of "criminal action" in Evidence Code section 1157 would frustrate the legislative purpose of not permitting the peer review privilege to hamper the discovery and prosecution of criminally negligent conduct by physicians.

The determination in *Memorial Medical Center, supra,* 234 Cal.App.3d 363, that a proceeding pursuant to Penal Code section 1524 constitutes a criminal action specifically was limited to the meaning of that term as used in Evidence Code section 1157. More importantly, the opinion in *Memorial Medical Center* did not recognize that the definition of "criminal action" in the Evidence Code expressly includes "criminal proceedings." (Evid. Code, §§ 100, 130.) This definition was added to ensure that the rules set forth in the Evidence Code apply to all actions and proceedings. (Cal. Law Revision Com. com., reprinted at 29B pt. 1 West's Ann. Evid. Code (1995 ed.) foll. § 120, p. 13.) Thus, the term "criminal action" as used in Evidence Code section 1157 necessarily encompasses special proceedings. The resolution of the present case, however, does not depend upon the meaning of the term

"criminal action" as used in any provision of the Evidence Code. Therefore, the construction of that term in *Memorial Medical Center* is not instructive for our purposes.

Because the *Bauman & Rose* hearing is not a criminal action, it must be classified as either a civil action or a special proceeding. As established above, a civil action "is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong." (§ 30.) ■ Special proceedings, on the other hand, generally are "confined to the type of case which was not, under the common law or equity practice, either an action at law or a suit in equity. [Citations.]" (*Tide Water Assoc. Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 822 [279 P.2d 35].) Special proceedings instead are established by statute. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 13, p. 66; see *In re Rose* (2000) 22 Cal.4th 430, 452 [93 Cal.Rptr.2d 298, 993 P.2d 956].) The term "special proceeding" applies only to a proceeding that is distinct from, and not a mere part of, any underlying litigation. (*Avelar v. Superior Court, supra,* 7 Cal.App.4th 1270, 1275.) The term "has reference only to such proceedings as may be commenced independently of a pending action by petition or motion upon notice in order to obtain special relief. [Citations.]" (*In re Sutter-Butte By-Pass Assessment* (1923) 190 Cal. 532, 537 [213 P. 974].)

■ The motion of the attorneys for a hearing to determine the applicability of claimed privileges to the seized documents does not include any express request for a declaration that some of the documents are privileged, or for an order enforcing and protecting privileged documents. The motion simply requests that a hearing be held so that the applicability of any privilege "can be determined" in accordance with the decision in *Bauman & Rose,* which characterizes the hearing authorized therein as one to ascertain whether the attorney-client privilege or work-product doctrine applies. (*Bauman & Rose, supra,* 37 Cal.App.4th at p. 1771.) Presumably, however, if the superior court determines that some documents are privileged, it would order such documents sealed and/or returned to the attorneys. Such an order, in effect, would amount to a declaration and enforcement of the rights of the attorneys and their clients. Thus, the motion could be considered analogous to a civil action against the People for declaratory or injunctive relief. (Cf. *Tide Water Assoc. Oil Co. v. Superior Court, supra,* 43 Cal.2d at pp. 822-823 [statutory proceeding for an injunction against waste of gas essentially is an action in equity for the prevention of a wrong]; *Agricultural Labor Relations Bd. v. Superior Court* (1983) 149 Cal.App.3d 709, 713-714 [196 Cal.Rptr. 920] [statutory proceeding for a temporary restraining order constitutes an equitable action for injunctive relief].)

On the other hand, it is difficult to characterize the motion of the attorneys as an ordinary action, historically recognized under the common law or

equity practice, in which the attorneys are prosecuting the People. The *Bauman & Rose* proceeding here stems from the People's criminal investigation against the attorneys that could lead to the prosecution of the attorneys as defendants. No charges yet have been filed, but the attorneys nevertheless are acting defensively. Although the label ascribed to a proceeding by the parties or the court is not determinative, we observe that the motion of the attorneys is captioned simply "In the Matter of the Search Warrant for the Premises of" the attorneys and others. The People are not named as a defendant but have appeared in the proceeding to oppose the claims of privilege asserted by the attorneys. Indeed, the superior court designated the deputy district attorney as counsel for *plaintiff*, apparently because the People would be considered the plaintiff in any future criminal action against the attorneys.

In determining whether the *Bauman & Rose* hearing is a civil action or a special proceeding, it is appropriate to consider the essential character of the proceeding and the classification of similar remedies. (See *Bravo v. Cabell*, *supra*, 11 Cal.3d 834, 839; *Agricultural Labor Relations Bd. v. Superior Court*, *supra*, 149 Cal.App.3d 709, 714-715.) The decision in *Bauman & Rose* authorizes a hearing that is similar to the privilege hearing provided pursuant to Penal Code section 1524, subdivision (c), for attorneys who are not suspects. A hearing conducted under that statute, according to the court in *Memorial Medical Center*, *supra*, 234 Cal.App.3d at page 388, is a special proceeding of a criminal nature for purposes other than Evidence Code section 1157. Furthermore, a motion for a *Bauman & Rose* hearing is analogous to a motion by a nondefendant for the return of property not described in the warrant under which it was seized. (Pen. Code, §§ 1539, 1540.) When no criminal action is pending, such a motion is considered to be a special proceeding and, like a *Bauman & Rose* hearing, has been held to be authorized by Penal Code section 1536. (*Ensoniq Corp. v. Superior Court*, *supra*, 65 Cal.App.4th at pp. 1546-1547.)

Thus, the essential character of a *Bauman & Rose* hearing, like the proceedings discussed in the preceding paragraph, is to determine whether property seized pursuant to a search warrant, from an individual who has not been charged with a crime, should remain available to law enforcement authorities or be returned to the individual. In addition, as with the other types of hearings, the *Bauman & Rose* hearing is authorized by a statute in the Penal Code, even if it has the effect of protecting private rights of individuals not suspected of criminal activity. The hearing has little in common, however, with an ordinary proceeding at common law or in equity in which a plaintiff prosecutes a defendant for the enforcement and protection of private rights. For these reasons, we conclude that a *Bauman & Rose* hearing is a special proceeding, rather than a civil action.

2.

The People concede that a *Bauman & Rose* hearing is a special proceeding. According to the People, however, Code of Civil Procedure section 639 does not authorize a reference in a *Bauman & Rose* hearing, because this statute authorizes a reference only in *civil* special proceedings, and a proceeding pursuant to *Bauman & Rose* is a *criminal* special proceeding. The People rely upon the circumstance that section 639 appears in part 2 of the Code of Civil Procedure (Of Civil Actions), and within title 8 of that part (Of the Trial and Judgment in Civil Actions). Part 2 of the Penal Code, on the other hand, sets forth the provisions governing *criminal* procedure. The chapter of the Penal Code concerning search warrants, which includes statutes relevant to this proceeding (Pen. Code, §§ 1524, 1536), is located in part 2, title 12, captioned Special Proceedings of a Criminal Nature. As the People observe, no Penal Code section in this chapter authorizes a trial court to compel a reference in a special proceeding.

Because a *Bauman & Rose* hearing is analogous to hearings authorized by Penal Code section 1524 and other statutes in part 2, title 12, of that code, we determine that a *Bauman & Rose* hearing is a criminal special proceeding. This determination is supported by *Memorial Medical Center, supra*, 234 Cal.App.3d 363, which characterized a proceeding pursuant to Penal Code section 1524, commenced before charges had been filed, as a criminal special proceeding. The Court of Appeal in that case explained: "While neither [the criminal suspect nor the custodian resisting disclosure of documents] has been charged with a crime, the People's request for a search warrant was brought as part of an investigation of allegedly criminal conduct [by the suspect]. The People anticipate that seizure of the items sought under the warrant will provide evidence which will support the filing of a [criminal] complaint . . . . There is no intimation that the documents sought under the search warrant are to be used in a civil action. Hence, there is no doubt but that the special proceeding . . . is fully grounded in criminal, rather than civil law." (*Memorial Medical Center,* at p. 388; see also *People v. Superior Court (Aquino)* (1988) 201 Cal.App.3d 1346, 1349-1350 [248 Cal.Rptr. 50] [the People must be granted party status in a precomplaint proceeding for the return of seized property pursuant to Penal Code sections 1539 and 1540, because investigation and gathering of evidence is inseparable from the district attorney's prosecutorial function].)

We further conclude that Code of Civil Procedure section 639 does not authorize a reference in a special proceeding of a criminal nature. In *Gonzales v. Superior Court* (1935) 3 Cal.2d 260 [44 P.2d 320] (*Gonzales*), we held that another statute in part 2 of the Code of Civil Procedure does not

apply in a criminal action. The defendant in *Gonzales* claimed that his failure to comply with a rule of court was due to the inadvertence and excusable neglect of counsel, and that Code of Civil Procedure section 473 authorized the court to grant relief from dismissal of his appeal. In rejecting this claim, we first recognized that the Penal Code contains provisions governing procedure in criminal actions, and that, unlike some statutes in the Code of Civil Procedure, section 473 is not made applicable to criminal actions by an express provision of the Penal Code. (*Gonzales*, *supra*, 3 Cal.2d at p. 263, citing Pen. Code, §§ 1046 [juries are formed in the same manner in both civil and criminal actions], 1102 [rules of evidence in civil actions generally are applicable to criminal actions].) We further observed that section 473 is found in part 2 of the Code of Civil Procedure (Of Civil Actions), title 6 (Of the Pleadings in Civil Actions). ■ Our decision states: "It is an elementary rule of construction that chapter and section headings in the codes are entitled to considerable weight in interpreting the various sections and should be given effect according to their import, to the same extent as though they were included in the body of the law. [Citation.]" (3 Cal.2d at p. 263; see also *People v. Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036] [chapter and section headings properly may be considered in determining legislative intent].) Furthermore, we noted in *Gonzales* that the framers of the codes in 1872 cited many decisions indicating their interpretation of section 473, but none of these decisions was a criminal case. (3 Cal.2d at p. 263.) Although recognizing that the curative provisions of section 473 would be of greater import in criminal matters than civil matters, our opinion states: "That such a remedial section should exist may be conceded but arguments based on such a premise are more properly addressed to the legislature than to the courts." (3 Cal.2d at p. 262.)

■ We recently relied upon *Gonzales* in determining that Code of Civil Procedure section 630, providing for directed verdicts, appears to apply only to civil actions. (*People v. Hernandez* (2000) 22 Cal.4th 512, 525 & fn. 2 [93 Cal.Rptr.2d 509, 994 P.2d 354].) Our decision observes that this statute does not refer expressly to criminal actions, and that no provision in the Penal Code purports to allow for a directed verdict under section 630.

The Court of Appeal also recently followed *Gonzales* in holding that Code of Civil Procedure section 1008 does not apply in criminal cases. In *People v. Castello* (1998) 65 Cal.App.4th 1242 [77 Cal.Rptr.2d 314] (*Castello*), the People sought to limit the power of the trial court to reconsider interim rulings in a criminal action. The People relied upon section 1008, which provides that a party may seek reconsideration only in certain circumstances, such as when new facts are discovered or there has been a change in the law. In holding that the court's inherent power to reconsider its rulings in a

criminal action is not limited by section 1008, the appellate court in *Castello*, relying in part upon our opinion in *Gonzales, supra*, 3 Cal.2d 260, determined that only those procedural provisions of the Code of Civil Procedure that expressly are made applicable to penal actions apply in criminal cases. (*Castello, supra*, 65 Cal.App.4th at p. 1247; see also *People v. Glimps* (1979) 92 Cal.App.3d 315, 325, fn. 6 [155 Cal.Rptr. 230] [section 1011, specifying methods for service, does not apply in criminal actions because the statute appears in part 2 of the Code of Civil Procedure and is not referenced in the Penal Code].)[12]

Although the foregoing decisions considered criminal actions, rather than criminal special proceedings, Penal Code section 690 specifies that the provisions of part 2 of that code "shall apply to all criminal actions *and proceedings* in all courts, except where . . . special provision is made for particular courts or proceedings." (Italics added.) Like Code of Civil Procedure sections 473, 630, 1008, and 1011—considered in the decisions discussed above—section 639 is not incorporated in the procedural provisions of the Penal Code, including those provisions that relate to criminal special proceedings analogous to a *Bauman & Rose* hearing.

Moreover, nothing in the language or history of section 639 suggests that it was intended to apply in criminal special proceedings. The predecessor to section 639 appeared in California's first statutes in 1850 and was included in "An Act to Regulate Proceedings in Civil Cases." (Stats. 1850, ch. 142, § 164, pp. 442-443; cf. Stats. 1850, ch. 119, p. 275 ["An Act to Regulate Proceedings in Criminal Cases"].) The following year, the statute was amended to authorize a reference in a special proceeding and was recodified. (Stats. 1851, ch. 5, § 183, p. 79.) This new section appeared in Statutes 1851, chapter 5, entitled "An Act to Regulate Proceedings in Civil Cases," title 6, captioned Of the Trial and Judgment in Civil Actions. (Stats. 1851, at pp. 51, 73.) As established above, the current version of section 639 remains in

---

[12]The opinion in *Castello, supra*, 65 Cal.App.4th 1242, concerned section 1008, a statute in the Code of Civil Procedure found in part 2 of that code, which expressly governs civil cases. Part 1 of the Code of Civil Procedure, however, is entitled Of Courts of Justice, and includes provisions of general application in both civil and criminal proceedings. (E.g., §§ 41 [Supreme Court and Courts of Appeal may transact business at any time], 170.1 [judge shall be disqualified for grounds set forth in the statute].) Thus, the statement in *Castello*—that provisions in the Code of Civil Procedure govern criminal cases only if expressly made applicable thereto—properly is limited to the provisions in part 2 of the code, in which section 1008 appears. (See *People v. Cook* (1989) 209 Cal.App.3d 404, 407 [257 Cal.Rptr. 226] [certain sections in part 1 of the Code of Civil Procedure apply in criminal matters]; *Fabricant v. Superior Court* (1980) 104 Cal.App.3d 905, 914-915 [163 Cal.Rptr. 894] [many provisions in the Code of Civil Procedure apply in criminal proceedings, depending upon the chapter in which they appear and upon related provisions in the Penal Code].)

portions of the Code of Civil Procedure with headings expressly referring to civil cases.

Furthermore, as in *Gonzales, supra,* 3 Cal.2d at page 263, the notes of the Code Commissioners in 1872 refer to several decisions reflecting their understanding of section 639, and all of these decisions concern civil matters. (Code Comrs. note, reprinted at 16A West's Ann. Code Civ. Proc. (1976 ed.) foll. § 639, pp. 153-154.) Although these notes provide no indication of the legislative intent underlying the 1851 amendment that added special proceedings to the type of cases in which the trial court may compel a reference, we observe that, prior to the 20th century, "[n]early all, if not all, special proceedings [were] civil in their nature." (*Estate of Joseph* (1897) 118 Cal. 660, 663 [50 P. 768].) Indeed, aside from the present case, the parties do not cite any decision in which a trial court in any type of criminal proceeding ordered a reference pursuant to section 639, and our own research has disclosed none. The few cases considering a trial court's authority under section 639 to appoint a referee in a special proceeding have involved civil proceedings. (E.g., *In re Reed* (1928) 204 Cal. 119, 121 [266 P. 948] [proceeding for registration of land titles]; *Estate of Johnston* (1970) 12 Cal.App.3d 855, 859-860 & fn. 1 [91 Cal.Rptr. 116] [probate proceeding].) Our opinion in *In re Edgar M., supra,* 14 Cal.3d at page 734, also indicates that sections 638 and 639 apply only in civil cases, and that juvenile court referees in wardship proceedings are not appointed pursuant to those statutes.

Contrary to the contention of the attorneys, *Holt v. Kelly* (1978) 20 Cal.3d 560 [143 Cal.Rptr. 625, 574 P.2d 441] (*Holt*) does not hold that a trial court has authority pursuant to section 639 to appoint a referee in a special proceeding of a criminal nature. The petitioner in *Holt,* following the disposition of criminal charges against him, filed a petition for writ of mandate in the superior court, seeking the return of property seized from him at the time of his arrest. After the superior court denied relief, the Court of Appeal issued an alternative writ and appointed a referee to hear evidence and make factual findings. The Court of Appeal subsequently denied the writ petition, and we granted review. Before setting forth the standard of review of the factual findings made by the referee appointed by the Court of Appeal, we stated: "The appointment of a special referee without consent of the parties is authorized 'When it is necessary for the information of the court in a special proceeding.' (Code Civ. Proc., § 639, subd. [(a)(4)].) Since appellate courts are not equipped to take evidence, a reference is essential when the determination of controverted issues of fact becomes necessary in an original proceeding. [Citation.]" (*Holt, supra,* 20 Cal.3d at p. 562.) Our opinion then contrasts a general reference authorized by section 638 with a

special reference under section 639, and states that a special referee's findings are not binding on this court but are entitled to great weight. (20 Cal.3d at pp. 562-563.)

To the extent *Holt*'s references to sections 638 and 639 properly could be construed to suggest that these statutes apply in appellate proceedings, that decision is inapplicable here, because the mandate proceeding considered in *Holt* was not a criminal proceeding. After the disposition of his criminal action, the petitioner sought to compel a public officer to comply with the ministerial duty to "pay and deliver all the remainder of [a prisoner's] money and valuables to the prisoner or to his order upon his release from jail," as required by Government Code section 26640. Because a proceeding for a writ of mandate ordinarily is considered to be a civil special proceeding (*Bravo v. Cabell, supra,* 11 Cal.3d 834, 838), and the writ proceeding in *Holt* was not connected with any pending criminal action but rather initiated a new controversy regarding a public officer's duty to comply with provisions of the Government Code, the proceeding properly is characterized as civil in nature. Indeed, we observed that because the petitioner's property apparently had been lost or destroyed, the ultimate goal of the petition was to recover the value of the property—a typical civil remedy. (*Holt, supra,* 20 Cal.3d at p. 565, fn. 5.)

The attorneys and the superior court do not cite or discuss *Gonzales, supra,* 3 Cal.2d 260, and its progeny, which hold that certain sections in part 2 of the Code of Civil Procedure do not govern criminal proceedings unless expressly made applicable to such proceedings. Instead the attorneys assert that a *Bauman & Rose* proceeding constitutes a civil proceeding, but, as established above, this assertion is incorrect. The superior court does not address whether the special proceeding is civil or criminal, but rather contends that section 639 applies in either type of proceeding. In support of this contention, the superior court claims that criminal suspects must be able to avail themselves of remedies authorized by the Code of Civil Procedure.

Section 639 provides no remedy, however. Instead, it authorizes a trial court, in limited circumstances, to compel the parties to submit part of a judicial proceeding to a referee. The pertinent question is whether this statute applies in criminal proceedings. We have determined that section 639 applies only in civil matters. As explained in *Gonzales, supra,* 3 Cal.2d at page 262, even if we believed that a statute in part 2 of the Code of Civil Procedure *should* apply in a criminal proceeding, the statute is inapplicable if the Legislature intended it to govern only civil matters.

In sum, although section 639 authorizes a compulsory reference in a special proceeding, this statute does not apply to special proceedings of a

criminal nature. Because a *Bauman & Rose* hearing is a criminal special proceeding, section 639 confers no power upon a trial court to compel a reference in such a hearing.

B

The parties do not assert that any statute other than Code of Civil Procedure section 639 authorizes the appointment of a special master to assist the court in a *Bauman & Rose* proceeding. The People contend that, without explicit statutory authorization, the superior court lacks power to refer matters to a special master when the parties do not consent. The superior court answers that it must retain the flexibility to adopt reasonable procedures that will enable it to discharge its responsibilities in *Bauman & Rose* proceedings, as well as in similar hearings such as those conducted pursuant to Penal Code sections 1524 and 1538.5. Although the People's position is supported by decisions regarding compulsory references in *civil* proceedings, we conclude that, in the absence of statutes regulating the appointment of referees or special masters in *criminal* proceedings, the superior court possesses inherent authority to appoint a special master to assist it in conducting a *Bauman & Rose* hearing.

In *People v. Hayne* (1890) 83 Cal. 111, 118-120 [23 P. 1], we observed that courts possess inherent power to rely upon assistants such as commissioners and referees. ██ For example, in habeas corpus proceedings, appellate courts appoint referees to take evidence and make recommendations regarding disputed factual issues. (*People v. Romero* (1994) 8 Cal.4th 728, 740 [35 Cal.Rptr.2d 270, 883 P.2d 388].) This procedure is independent of any statute or rule. (6 Witkin, Cal. Criminal Law (3d ed. 2000) Criminal Writs, § 69, pp. 601-602.) In addition, the California Constitution authorizes the Legislature to permit appellate courts to take evidence and make findings of fact in appeals (Cal. Const., art. VI, § 11), and section 909 specifies that an appellate court may make factual findings. Neither the constitutional provision nor the statute, however, authorizes appellate courts to appoint a referee for this purpose. ██ Nevertheless, the inherent power to appoint referees in this situation is recognized by rule of court. (Cal. Rules of Court, rule 23(b); see also *In re Attorney Discipline System* (1998) 19 Cal.4th 582, 624-625 [79 Cal.Rptr.2d 836, 967 P.2d 49] [pursuant to its inherent judicial authority over attorney discipline, this court appointed a special master to oversee collection and disbursement of fees to fund the attorney discipline system]; *Wilson v. Eu* (1991) 54 Cal.3d 471, 473-474 [286 Cal.Rptr. 280, 816 P.2d 1306] [in exercising its original jurisdiction to arrange for adoption of appropriate reapportionment plans, this court appointed three special masters to hold hearings and file a report and recommendations]; accord, *Ex*

*parte Peterson* (1920) 253 U.S. 300, 312-314 [40 S.Ct. 543, 547-547, 64 L.Ed. 919] [federal courts possess inherent authority to appoint auditor or special master to examine accounts].)

Unlike the authority of appellate courts to appoint subordinate judicial officers, the power of trial courts to do so is the subject of a specific constitutional provision: "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." (Cal. Const., art. VI, § 22.) A similar provision was included in our state's first Constitution. From 1849 until 1966, the Constitution provided that the Legislature may authorize trial courts to appoint commissioners to perform specified duties. (Cal. Const. of 1849, art. VI, § 11; Cal. Const. of 1879, art. VI, § 14.) Early drafts of the 1966 revision to article VI proposed eliminating this provision on the ground that "[n]o constitutional authority seems necessary for the use of commissioners . . . ." (Cal. Const. Revision Com., art. VI committee, first working draft (Feb. 28, 1965) p. 48.) "Upon reconsideration, however, it was concluded that the separation of powers doctrine might be construed to prohibit the Legislature from providing for officers to relieve judicial burdens. Rather than taking that risk, [new section 22 of article VI] is recommended in recognition of the necessity for assistance in the performance of some minor but nonetheless 'Judicial' duties." (*Id.*, second working draft (Apr. 26, 1965) p. 48.)

Accordingly, in proposing the present version of article VI, section 22, the California Constitution Revision Commission stated: "Reference to commissioners is needed so that the separation of powers doctrine will not be construed to prohibit the Legislature from providing for officers to assist judges. . . . To indicate the subordinate nature of duties that officers such as commissioners should be allowed to perform, the phrase 'subordinate judicial duties' was used. The Commission felt that it should not limit the assistants to commissioners and, therefore, the phrase 'such as commissioners' appears in the proposed section. [¶] The [C]ommission draft empowers the Legislature to authorize court commissioners and trial courts of record to make appointments once the Legislature has authorized them." (Cal. Const. Revision Com., Proposed Revision, art. VI, § 22 (1966) p. 99; see also Grodin et al., The California State Constitution (1993) p. 134 [absent the authorization provided by this section, the Legislature's provision for the appointment of special commissioners in certain matters might be considered to violate the separation of powers doctrine].) This constitutional provision, which refers to "officers *such as* commissioners" (Cal. Const., art. VI, § 22, italics added), has been held applicable to commissioners and referees employed by the court on a regular basis, as well as to private referees

appointed to render services in a particular proceeding. (See *In re Edgar. M.*, *supra*, 14 Cal.3d at pp. 733-734 [juvenile court referee employed by court]; *Aetna Life Ins. Co. v. Superior Court, supra*, 182 Cal.App.3d at pp. 433, 435-436 [private attorney acting as referee in single case].)

As the foregoing history indicates, article VI, section 22, was not intended to circumscribe the inherent power of the courts to appoint subordinate judicial officers, but rather was intended to confirm the Legislature's authority to provide for such appointments. (See *In re Edgar M., supra*, 14 Cal.3d at pp. 733-734.) Despite the circumstance that article VI, section 22, did not limit the inherent authority of courts to appoint individuals to perform subordinate judicial duties, a number of decisions have stated that the power of a trial court to compel the parties to submit an aspect of a judicial proceeding to a subordinate judicial officer is derived from statute, and only those issues particularly described in the statute may be referred without the consent of the parties. (E.g., *Hastings v. Cunningham* (1868) 35 Cal. 549, 551-552; *Williams v. Benton* (1864) 24 Cal. 424, 425-426; *Seaman v. Mariani* (1850) 1 Cal. 336, 337; *Kim v. Superior Court* (1998) 64 Cal.App.4th 256, 261 [75 Cal.Rptr.2d 468]; *Ruisi v. Thieriot* (1997) 53 Cal.App.4th 1197, 1209 [62 Cal.Rptr.2d 766]; *Bird v. Superior Court* (1980) 112 Cal.App.3d 595, 599 [169 Cal.Rptr. 530].) In *Williams v. Benton, supra*, 24 Cal. 424, we stated: "The power of the Court to compel a reference is derived from [the predecessor of section 639 (Stats. 1851, ch. 5, § 183, p. 79)], and can be exercised only as therein provided. . . . [¶] The character of the issue which may be referred is particularly described, and, by necessary implication, all issues not answering to that description are excluded from the operation of the section." (*Id.* at pp. 425-426.)

We believe these decisions are distinguishable from the present case, however, because they were rendered in civil proceedings and concerned section 639 and its predecessor statutes. As established above (pt. III.A.2, *ante*), these statutes always have been located in portions of the Code of Civil Procedure (or of the former Practice Act) governing civil proceedings, and therefore they do not apply in criminal proceedings. No such provision is found in portions of the Penal Code that apply generally to criminal proceedings, or, for that matter, anywhere else in the Penal Code. Because the Legislature has not "particularly described" the character of issues that may be referred in criminal proceedings, the trial court does not lack, "by necessary implication," the power to compel a special reference with regard to other issues. (*Williams v. Benton, supra*, 24 Cal. at pp. 425-426.)[13]

Although the judicial branch possesses inherent authority to appoint assistants such as referees to perform subordinate judicial duties, the Legislature—by virtue of article VI, section 22, as well as its inherent legislative

---

[13]Penal Code section 1524, subdivision (c), authorizes the superior court to appoint a special master to conduct a search and to return allegedly privileged materials to the court for

power—properly may regulate the manner in which trial courts exercise this authority, so long as the Legislature does not defeat or materially impair the court's exercise of its constitutional power or the fulfillment of its constitutional functions. (See *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 52-59 [51 Cal.Rptr.2d 837, 913 P.2d 1046], and cases cited therein.) Accordingly, the judiciary has respected the Legislature's statutory limitations upon the power of trial courts to compel special references in civil proceedings, as set forth in section 639.[14] In the absence of applicable legislation, however, the court "has within it the power of self-preservation, indeed, the power to remove all obstructions to its successful and convenient operation," including, for example, the authority to hire staff to assist it in its operations. (*Millholen v. Riley* (1930) 211 Cal. 29, 33-34 [293 P. 69].) As we have seen, this power also extends to appointing special masters to perform subordinate judicial duties. (Accord, *Ex parte Peterson, supra*, 253 U.S. 300, 312-313 [40 S.Ct. 543, 547] [in the absence of legislation on the subject, federal courts possess inherent authority to appoint persons unconnected with the court to aid judges in the performance of their judicial duties]; *Assoc. of Mexican-American v. State of California* (9th Cir. 2000) 231 F.3d 572, 590-591 [same, with regard to technical advisers].) We do not discern any reason why this inherent power should not extend to *Bauman & Rose* proceedings. Accordingly, we conclude that the superior court is authorized by law to appoint a special master to perform subordinate judicial duties in a *Bauman & Rose* hearing.

C

■■■ Having determined that the superior court possesses inherent authority to appoint a special master for the purpose of performing subordinate judicial duties in a *Bauman & Rose* proceeding, we next consider whether the appointment of a special master under the circumstances of the present case would constitute an appropriate exercise of that authority. We conclude that it would.

As established above, the execution of a search warrant before charges have been filed does not constitute formal discovery in a pending action.

a hearing, but the statute does not authorize the appointment of a special master to perform subordinate judicial duties in connection with such a hearing.

[14]Outside the context of ordinary civil proceedings, the Legislature has authorized commissioners and/or referees to perform specified duties in only limited situations. (E.g., Gov. Code, §§ 72190-72190.2 [under the direction of judges, court commissioners have the same powers as a judge with regard to infractions, and are permitted to conduct arraignments and issue bench warrants], 72401-72402 [traffic referee may act as a judge in infraction matters and perform limited duties in connection with misdemeanor violations of the Vehicle Code]; Welf. & Inst. Code, §§ 247-253 [juvenile court referee is authorized to hear and render orders in juvenile cases, subject to rehearing by a judge].)

Nevertheless, contested privilege claims raised in connection with materials seized pursuant to a warrant closely resemble one category of discovery disputes that commonly are referred to referees in civil cases. Thus, section 639, subdivision (a)(5), states that the court may compel a special reference "[w]hen the court . . . determines that it is necessary for the court to appoint a referee to hear and determine any and all discovery motions and disputes relevant to discovery in the action and to report findings and make a recommendation thereon." Discovery disputes properly are directed to a referee if, among other things, "the number of documents to be reviewed (especially in issues based on assertions of privilege) make the inquiry inordinately time-consuming." (*Taggares v. Superior Court* (1998) 62 Cal.App.4th 94, 105 [72 Cal.Rptr.2d 387]; see also *DeBlase v. Superior Court* (1996) 41 Cal.App.4th 1279, 1284 [49 Cal.Rptr.2d 229] [reference is appropriate for "claims of privilege requiring sifting through numerous documents"].) Although the trial court's inherent power to appoint a referee in a *Bauman & Rose* proceeding is not coextensive with its statutory power to do so in civil cases pursuant to section 639, these analogous decisions inform our inquiry in the present case.

The superior court adequately justified its intention to appoint a special master to assist it in the underlying *Bauman & Rose* proceeding. Approximately 220 files (15 to 20 packing boxes) were seized from the attorneys, who assert claims of privilege with regard to 179 client files. The People contend that the claims of attorney-client privilege are defeated by the crime/fraud exception. The superior court estimated that the task of reviewing these materials could consume 80 to 100 hours. The review and categorization of voluminous case files seized from attorneys in connection with disputed assertions of privilege with regard to such materials, as in the present case, constitute complex tasks that would consume an inordinate amount of time if performed solely by a superior court judge, who otherwise could devote his or her efforts to performing other judicial duties. These tasks also are the type of subordinate judicial duties routinely performed by commissioners or discovery referees in civil cases. Although the proposed findings and recommendations of a special master in a *Bauman & Rose* proceeding would not be binding and would be subject to mandatory, independent review by the trial judge before any ruling could be rendered, the assistance of the special master in conducting the initial review and categorization of the documents and in making preliminary findings and recommendations greatly would reduce the time and effort the judge must devote to the matter. We also believe that it is significant that neither the People nor the attorneys objected to the court's appointment of a special master for this purpose. The People simply seek to avoid liability for the special master's fees.

We determine that the superior court's appointment of a special master to assist it in reviewing the materials seized from the attorneys and to make recommendations to the court regarding the claims of privilege they have asserted would constitute an appropriate exercise of the court's inherent authority.

## IV

Finally, we consider whether the superior court possesses legal authority to require the People to pay one-half the fees of a special master appointed pursuant to the court's inherent power in a *Bauman & Rose* proceeding. The Court of Appeal held that allocation of this expense to the People is appropriate under section 645.1, subdivision (b), which concerns the fees of referees appointed pursuant to section 639. Because we have determined that section 639 does not authorize the appointment of a referee in a *Bauman & Rose* proceeding, and because section 645.1 is limited to the compensation of referees appointed pursuant to section 639, section 645.1 does not authorize the imposition of this cost upon the parties in such a proceeding. We determine that no other statute permits the superior court to require the parties to bear the fees of a referee or special master in a *Bauman & Rose* proceeding, and that the superior court also lacks the inherent authority to do so.

Because of the central role of the judicial system in society, public funding of the courts is an established tradition, and the ability to shift the cost of court operations to the parties is limited, particularly in criminal cases. (See *California Teachers Assn. v. State of California* (1999) 20 Cal.4th 327 [84 Cal.Rptr.2d 425, 975 P.2d 622].) For example, in civil cases litigants properly may be required to pay fixed, incidental court fees that indirectly subsidize a portion of the cost of the judicial system, such as filing fees. (*Id.* at p. 334; Gov. Code, §§ 26820-26863; see *Cook v. Municipal Court* (1985) 287 Ark. 382 [699 S.W.2d 741] [filing fees are required because "it is proper to require litigants to pay a small part of the expense necessary for the maintenance of the courts"].) In a criminal proceeding, however, neither the People nor the defendant legally may be required to pay even limited costs such as filing fees. (Gov. Code, §§ 6103, 26857.) Similarly, although prevailing parties in civil cases can recover from their adversaries various costs of litigation (Code Civ. Proc., §§ 1032, 1033.5), no analogous provision authorizes the award of such costs in criminal proceedings. For example, in a civil action the superior court is authorized to require the parties to pay the fees of court-appointed expert witnesses, and thereafter tax the expert's fees as costs, but fees for such witnesses appointed in criminal actions must be

paid from public funds. (Evid. Code, § 731, subds. (a), (c); Code Civ. Proc., § 1033.5, subd. (a)(8); see Cal. Rules of Court, rule 810(d) [fees for court-appointed expert witnesses and for other professional services ordered by the court for its own use constitute costs of court operations funded by the state pursuant to Gov. Code, § 77200].)[15]

Thus, in enacting laws requiring parties to subsidize a small portion of the cost of court operations, the Legislature has drawn a distinction between criminal and civil matters. In criminal actions and proceedings the cost of court operations related to hearing and deciding the case must be borne entirely by the courts from public funds, with very few and limited exceptions.[16] In light of this statutory scheme and legislative purpose, as well as the established tradition of public funding of the judicial system, the superior court lacks inherent authority to require the parties to pay the cost of court operations in a criminal action or proceeding, in the absence of an express statutory provision to the contrary. (Cf. *Hogoboom v. Superior Court* (1996) 51 Cal.App.4th 653 [59 Cal.Rptr.2d 254] [comprehensive statutory scheme regarding the imposition of fees and costs in family law matters precludes a superior court from adopting local rules requiring additional fees for conciliation and mediation].) When a trial court appoints a private special master

---

[15]The Court of Appeal has held that fees of various court-appointed assistants necessary for the conduct of *civil* litigation constitute statutory costs awarded to the prevailing party pursuant to Code of Civil Procedure section 1032. (E.g., *Gibson v. Bobroff* (1996) 49 Cal.App.4th 1202, 1207-1210 [57 Cal.Rptr.2d 235] [private mediator]; *Winston Square Homeowner's Assn. v. Centex West, Inc.* (1989) 213 Cal.App.3d 282, 292-293 [261 Cal.Rptr. 605] [special master for discovery and settlement]; *Most Worshipful Lodge v. Sons etc. Lodge* (1956) 140 Cal.App.2d 833, 834-835 [295 P.2d 912] [referee]; *Estrin v. Fromsky* (1942) 53 Cal.App.2d 253, 255 [127 P.2d 603] [accountant].) These decisions provide no guidance in the present case, however, because section 1032, granting a court the discretion to award to the prevailing party in a civil action costs "reasonably necessary to the conduct of the litigation" (§ 1033.5, subd. (c)(2)), does not apply in criminal proceedings, and the Penal Code does not contain any provision comparable to section 1032. (Cf. Pen. Code, §§ 1202.4 et seq. [requiring convicted defendant to pay restitution to victims], 1203.1b et seq. [requiring convicted defendant, upon a showing of his or her financial ability to pay, to reimburse specified sums such as the cost of probation, incarceration, parole supervision, and court-provided legal assistance].)

[16]For example, a court is authorized to require a party in a criminal case, and/or the party's attorney, to pay monetary sanctions to the county for the violation of a lawful court order. (Code Civ. Proc., § 177.5; *People v. Tabb* (1991) 228 Cal.App.3d 1300, 1305-1312 [279 Cal.Rptr. 480] [section 177.5 authorizes a court in a criminal matter to recoup wasted costs resulting from delay or inconvenience caused by deputy public defender's failure to appear at scheduled hearing].) In addition, an appellate court properly may impose sanctions in a criminal appeal, including sums necessary to reimburse the court for the cost of resources devoted to a frivolous appeal. (*Gottlieb v. Superior Court* (1991) 232 Cal.App.3d 804, 813-815 [283 Cal.Rptr. 771] [sanctions imposed against defendant's appellate counsel], citing *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 16-18 [244 Cal.Rptr. 581] [sanctions made payable directly to the appellate court for the cost of resolving a frivolous appeal].)

because his or her assistance is necessary for the efficient operation of the court in a *Bauman & Rose* proceeding, the fees of the special master properly are deemed to be a cost of court operations incurred in support of judicial officers. As such, these sums must be paid from public funds allocated to the superior court, unless the Legislature has specified otherwise. (See *Gardiana v. Small Claims Court* (1976) 59 Cal.App.3d 412, 424 [130 Cal.Rptr. 675] [in the absence of any legislative directive to the contrary, the court possesses authority to order that an interpreter, appointed to ensure the due administration of justice, be compensated with public funds].)

The superior court contends that Government Code section 29601, subdivision (b), authorizes the imposition of the special master's fees upon the People. This statute provides that expenses of the district attorney incurred in the detection of crime and in the prosecution of criminal cases are county charges.[17] The superior court's reliance upon this provision reflects a misunderstanding of the court's role in this context. As we have explained, a court's duty to conduct a *Bauman & Rose* hearing is an aspect of its judicial obligations. The judicial determination of privilege claims is not a criminal investigation or prosecution, and the circumstance that the trial court appoints a special master to perform subordinate judicial duties in such a proceeding does not transform this judicial function into a prosecutorial one.

The attorneys adopt a position similar to that of the superior court. They assert that a compulsory reference funded in part by the People is appropriate because the investigation resulting in the *Bauman & Rose* proceeding is subsidized in large part, if not entirely, by insurers who are required to pay a per-policy annual fee for the purpose of funding increased investigation and prosecution of automobile insurance fraud cases. (See Ins. Code, § 1872.8, subd. (a).) Indeed, at the hearing in the trial court, the primary justification articulated by the superior court for imposing a portion of the cost of a special master upon the People was that the *Bauman & Rose* hearing is only "an interstice" in an ongoing criminal investigation funded by the insurance industry, and therefore the court should not be burdened with the cost of conducting the hearing. The Court of Appeal similarly stated that the cost of a special master "is properly viewed as a cost of the People's criminal investigation." We disagree. Because the duty to conduct a hearing in this context and to rule upon the claims of privilege asserted by the attorneys is a *judicial* obligation, the investigatory fund created pursuant to

---

[17]Government Code section 29601 states in relevant part: "The following expenses of the district attorney . . . are county charges: [¶] (a) Traveling and other personal expenses incurred in criminal cases arising in the county . . . . [¶] (b) All other expenses necessarily incurred . . . : [¶] (1) In the detection of crime. . . . [¶] (2) In the prosecution of criminal cases . . . ."

the Insurance Code is irrelevant in deciding whether the superior court has authority to compel the People to share liability for the fees of a special master.

The superior court also relies upon Government Code section 29602, which provides that expenses incurred for the support of persons charged with or convicted of a crime "and for other services in relation to criminal proceedings for which no specific compensation is prescribed by law are county charges."[18] Assuming, for the sake of argument only, that the services of a special master in a *Bauman & Rose* proceeding constitute services in relation to criminal proceedings within the meaning of this statute,[19] the circumstance that a particular expense might be a county charge does not establish that the People, represented by the district attorney, first must pay this expense as a condition of participating in the proceeding, and then seek funds from the county to cover such an expense. Government Code section 29602 authorizes a court to require the *county* to pay for services related to criminal proceedings; it does not authorize the court to seek payment from *the People* or their counsel—even though the People might be represented by a county official (i.e., the district attorney) in the particular proceeding. (See *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307, 324-327 [204 Cal.Rptr. 165, 682 P.2d 360] [trial court properly ordered the county auditor to pay for court-ordered defense services pursuant to Government Code section 29602].)[20]

When a court lacks the funds necessary to fulfill its constitutional obligations, the solution is not to require one or more of the parties (or their counsel) to fund the cost of discharging the court's judicial duties, but rather

---

[18]Government Code section 29602 provides in relevant part: "The expenses necessarily incurred in the support of persons charged with or convicted of a crime and committed to the county jail and the maintenance therein and in other county adult detention facilities of a program of rehabilitative services in the fields of training, employment, recreation, and prerelease activities, and for other services in relation to criminal proceedings for which no specific compensation is prescribed by law are county charges. . . ."

[19]But see *Gibson v. County of Sacramento* (1918) 37 Cal.App. 523, 526 [174 P. 935] (the term "criminal proceedings" as used in the predecessor to Government Code section 29602 is limited to proceedings occurring *after* the filing of criminal charges); 75 Ops.Cal.Atty.Gen. 117, 121 (1992) (expenses encompassed by this statute are county charges "only after 'the complaint charging the offense is filed with the court or magistrate or when the grand jury receives evidence for the purpose of proving a crime on which an indictment may be based' ").

[20]We observe that even if section 645.1, subdivision (b), authorized the trial court to impose the cost of a special master upon "the parties" in a *Bauman & Rose* proceeding, as the Court of Appeal held, the current version of that statute expressly states that the term "parties" does not include the parties' counsel. Thus, the *district attorney*, as counsel for the People (a party to the *Bauman & Rose* proceeding), could not be ordered to pay for a special master or referee pursuant to this section.

to seek additional public funds from the appropriate entity responsible for providing funds for that purpose. In *Wilson v. Eu, supra*, 54 Cal.3d 471, for example, after appointing special masters to assist the court in preparing reapportionment plans, we directed the Administrative Office of the Courts to request from the Governor and the Legislature a special appropriation, augmenting the existing appropriations made for the support of the judicial branch, to cover the necessary expenses of the special masters and their staff. (*Id.* at p. 474.) We did not require the parties (e.g., the Governor and the Legislature) to pay this cost from funds previously appropriated to the support of the executive and legislative branches of government.

The superior court seeks further support for its position by contending that its independence will be threatened if the People are not required to pay a portion of the cost of a special master. Thus, the superior court states: "The People are charged with investigating crimes. Having chosen to execute a search warrant, they seized a multitude of items with unilateral control over its resources. The People now seek to burden the Superior Court with all consequences of their previous unilateral decisions including weeks of document review. Such an absurd condition could ultimately result in a court not granting a warrant when an officer comes before it seeking evidence from a professional's home or office because of budget restraints on the court. The court must be able to maintain its independence and not be subjected to the dictates of the District Attorney."

The People do not seek to burden the superior court with a responsibility that arises from the People's unilateral actions, however. The superior court concluded that probable cause existed to believe that the attorneys have engaged in criminal activity, and the court issued a warrant for the search of their offices and homes and for the seizure of specified materials. The People executed that warrant and seized property described therein. The attorneys contend that some of the documents seized by the People are privileged. We have concluded that the attorneys have a right to a judicial determination of their claims of privilege, and *the attorneys* have sought such a hearing. The People have not requested that the superior court review privilege claims regarding documents outside the scope of the warrant. Thus, the People are not seeking to transfer their responsibilities to the court or to dictate what the court must do. Instead, the attorneys have asserted claims of privilege regarding documents seized pursuant to the warrant issued by the superior court, and it is the superior court's responsibility to rule upon those claims. We do not understand the superior court's position as suggesting that *the People* should review the documents and make a unilateral determination whether they are privileged, thus violating the privileges the attorneys seek to protect. Indeed, the superior court's action sealing the documents pending

a determination of the privilege claims indicates that the court believed the People should not have access to documents seized pursuant to the warrant until a judicial determination of these claims has been completed.

Furthermore, although we are cognizant of concerns regarding the work-load of judges and budgetary limitations, we are confident that trial judges, upon an adequate showing, will not hesitate to render a legally appropriate decision regarding whether to issue a search warrant authorizing the seizure of materials from a professional's home or office, notwithstanding the potential burdens that might be imposed upon the court because of the issuance of such a warrant. As established above, in certain circumstances the trial court properly may appoint a special master to provide assistance in an ensuing *Bauman & Rose* proceeding, but if the court presently lacks funds to pay the hourly fees of a private special master necessary to review privilege claims with regard to such materials, it should consider alternatives such as appointing a commissioner or referee employed by the court, conducting the hearing itself, or seeking additional public funding for this purpose.

In summary, at least in the absence of an applicable statute, the services of a special master, appointed (pursuant to the court's inherent authority) to perform subordinate judicial duties in a *Bauman & Rose* proceeding, consti-tute an aspect of the court's operations that must be paid for by the court from public funds provided for such operations. Because statutory provisions such as Code of Civil Procedure sections 645.1 and 1032, authorizing courts to impose certain court-related costs upon parties, do not apply in criminal proceedings, and because we find no statutory or common law basis for requiring the parties to subsidize the cost of the court's operations in such proceedings, we hold that the superior court possesses neither statutory nor inherent authority to require the parties to pay any portion of the cost of a private special master in a *Bauman & Rose* proceeding.[21]

V

The judgment of the Court of Appeal is reversed with directions to vacate its order denying the petition, and to issue a writ of mandate compelling the

---

[21]Because we conclude that the superior court lacks statutory and inherent authority to require the parties to pay for the services of a special master in this context, it is unnecessary to decide whether the People are correct in contending that the services of a special master not employed by the court constitute an "official service" for which the district attorney shall not pay any fee. (Gov. Code, § 6103 [no public officer shall pay any fee for the performance of any official service].)

superior court to hear and determine the attorneys' claims of privilege in a manner consistent with the views expressed herein.

Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

Petitioner's petition for a rehearing was denied June 27, 2001.