[No. S022835. Sept. 25, 1991.]

PETE WILSON, Individually and as Governor, etc., Petitioner, v.
MARCH FONG EU, as Secretary of State, etc., et al., Respondents;
ASSEMBLY OF THE STATE OF CALIFORNIA et al., Real Parties in
Interest.

## COUNSEL

Gibson, Dunn & Crutcher, Robert E. Cooper, Theodore B. Olson and Daniel M. Kolkey for Petitioner.

No appearance for Respondents.

Browne & Woods, Allan Browne, Benjamin D. Scheibe, Robert B. Broadbelt, Michael J. Olecki, Bion Gregory, Remcho, Johansen & Purcell, Joseph Remcho, Robin B. Johansen and Charles C. Marson for Real Parties in Interest.

## OPINION

**THE COURT.**—In these mandate proceedings, we are called on to resolve the impasse created by the failure of the Legislature to pass legislative and congressional reapportionment bills acceptable to the Governor in time for the forthcoming 1992 Primary and General Elections. (See Cal. Const., art. XXI, § 1.)

On September 23, 1991, Governor Wilson exercised his authority to veto the legislative plans submitted to him. On that same day, an attempted override of the veto failed, and the Legislature adjourned for the remainder of the year. Because we lack assurance that reapportionment plans will be validly enacted in time for the 1992 elections, it is now incumbent on this

court to exercise its original jurisdiction and arrange for the drafting and adoption of appropriate reapportionment plans.

██ As we have repeatedly emphasized in past cases, "reapportionment is primarily a matter for the legislative branch of the government to resolve. [Citations.]" (*Legislature* v. *Reinecke* (1972) 6 Cal.3d 595, 598 [99 Cal.Rptr. 481, 492 P.2d 385] [hereafter *Reinecke I*].) Accordingly, we urge the Legislature and the Governor, in the exercise of their "shared legislative power" (*ibid.*) to enact reapportionment plans in time for the 1992 elections, and thus to render unnecessary the use of any plans this court may adopt. (See *ibid.*; see also *Legislature* v. *Reinecke* (1972) 7 Cal.3d 92, 93 [101 Cal.Rptr. 552, 496 P.2d 464] [*Reinecke II*].) ██ But because the impasse may continue indefinitely, because " 'it is our duty to insure the electorate equal protection of the laws' [citation]" (*Reinecke I, supra*, 6 Cal.3d 595, 598), and because California is entitled to seven additional congressional seats based on the 1990 census, we must proceed forthwith to draft such plans. (See also *Legislature* v. *Reinecke* (1973) 10 Cal.3d 396, 399, fn. 1 [110 Cal.Rptr. 718, 516 P.2d 6] [*Reinecke IV*] [necessity to act to fulfill equal protection guarantees and assure the right to equal participation in the congressional elections].)

In light of the acknowledged necessity of affording all interested parties an opportunity to be heard in such matters, it is appropriate that we appoint three Special Masters to hold public hearings to permit the presentation of evidence and argument with respect to proposed plans of reapportionment. (See *Legislature* v. *Reinecke* (1973) 9 Cal.3d 166, 167 [107 Cal.Rptr. 18, 507 P.2d 626] [*Reinecke III*].) We will expeditiously select and appoint these Masters, and they will be guided by the procedures and criteria developed by an earlier panel of Masters for the reapportionment plans adopted by this court in 1973 (see *Reinecke IV, supra*, 10 Cal.3d at pp. 402, 410-414), as well as by the provisions of article XXI, section 1, of the state Constitution. In addition, the Masters will consider the application of federal law, including the Voting Rights Act (42 U.S.C. § 1971 et seq.).

Following the hearings, the Masters will file their report and recommendations for possible adoption of reapportionment plans which will provide for 52 single-member congressional districts, 40 single-member Senate districts, 80 single-member Assembly districts, and 4 State Board of Equalization districts. The Masters shall set forth the criteria underlying the plans they recommend for adoption and the reasons for their recommendations.

Subject to this court's approval, the Masters will be authorized to employ counsel, independent experts in the field of reapportionment and computer technology, and other necessary personnel to assist them in their work. They

will be further authorized to seek the full cooperation of the Legislature and Governor in producing and using whatever data, computer models and programs, and technical assistance that may be made available to them by the Legislature or Governor and other state personnel who are knowledgeable in the mechanics of drafting reapportionment legislation. (See *Reinecke III, supra,* 9 Cal.3d at p. 168.)

The Administrative Office of the Courts (AOC) shall assist the Masters in securing the necessary personnel and the physical facilities required for their work. The AOC shall also prepare for prompt submission to the Governor and Legislature a request for a special appropriation to augment the appropriations made for the support of the judicial branch by the Budget Acts of 1991 and 1992 in order to reimburse those appropriations for the expenditures that must be made for the necessary expenses of the Masters and their staff. (See *Reinecke III, supra,* 9 Cal.3d at p. 168.)

Public hearings shall commence no later than 30 days from the date of the Masters' appointment, and the Masters shall present their recommendations to the court no later than November 29, 1991. We recognize that the Masters are thus given considerably less time to formulate their report and recommendations than the five-month period provided in *Reinecke III.* The shorter period is necessitated by the close proximity of the June 2, 1992, Primary Election, and the need to transmit to the county clerks information regarding the new districts no later than 104 days prior to that election (Elec. Code, § 6462). We are of the view that the November 29 deadline is realistic in light of considerable advances in computer technology since 1972.

Permission for additional parties to intervene in these proceedings will not be granted, but any present parties may file briefs with the court within 30 days of the filing of the Masters' recommendations. Other interested parties may file briefs as amici curiae within the same period. The matter will be set for oral argument shortly after the period for filing briefs has expired.

We reiterate: If at any time during these proceedings congressional and legislative reapportionment plans are validly enacted, this court will entertain an application to dismiss these proceedings.

Let an alternative writ of mandate issue, to be heard before this court at its courtroom when the proceeding is ordered on calendar.

The alternative writ is to be issued, served and filed on or before October 2, 1991.

The written return is to be served and filed on or before October 16, 1991.