[No. S022835. Oct. 23, 1991.]

PETE WILSON, Individually and as Governor, etc., Petitioner, v.
MARCH FONG EU, as Secretary of State, etc., et al., Respondents;
ASSEMBLY OF THE STATE OF CALIFORNIA et al., Real Parties in
Interest.

COUNSEL

Gibson, Dunn & Crutcher, Robert E. Cooper, Theodore B. Olson and Daniel M. Kolkey for Petitioner.

No appearance for Respondents.

Browne & Woods, Allan Browne, Benjamin D. Scheibe, Robert B. Broadbelt, Michael J. Olecki, Bion Gregory, Remcho, Johansen & Purcell, Joseph Remcho, Robin B. Johansen and Charles C. Marson for Real Parties in Interest.

OPINION

**THE COURT.**—On September 25, 1991, this court exercised its original jurisdiction by ordering issuance of an alternative writ of mandate contemplating the drafting and adoption by this court of reapportionment plans for the state's legislative, congressional and State Board of Equalization districts. (*Wilson* v. *Eu, ante,* p. 471 [286 Cal.Rptr. 280, 816 P.2d 1306] [hereafter *Wilson I*]).

In *Wilson I*, we indicated it was "appropriate that we appoint three Special Masters to hold public hearings to permit the presentation of evidence and argument with respect to proposed plans of reapportionment. [Citation.]" (*Supra, ante,* at p. 473.) On September 26, pursuant to the foregoing order, we appointed the Honorable George A. Brown, retired Presiding Justice of the Court of Appeal, Fifth Appellate District, the Honorable Rafael H. Galceran, retired Judge of the Los Angeles County Superior Court, and the Honorable Thomas Kongsgaard, retired Judge of the Napa County Superior Court, as Special Masters on Reapportionment, and we designated Justice Brown as Presiding Master.

In *Wilson I*, we directed the Masters to commence public hearings within 30 days of their appointment, and to present their recommendations to this court no later than November 29, 1991. (*Supra, ante,* at p. 474.) The Masters will hold such public hearings throughout the state during the period from October 24 to November 1. In *Wilson I*, we also called for a 30-day period of briefing and public comment following the filing of the Masters' recommendations (*ibid.*), and we presently contemplate oral arguments in this court during the week of January 6, 1992.

On October 9, respondent March Fong Eu, Secretary of State (hereafter Secretary), filed her answer to the petition for mandate, accompanied by supporting points and authorities and declarations. Among other matters, the Secretary proposes to this court a procedure for implementing plans of reapportionment at a time and in a manner which would avoid postponing or bifurcating the June 2, 1992, Primary Election. The Secretary indicates that delaying or splitting the June Primary Election could cost the state $40 million, "for which no appropriation has been made." (See also *Assembly* v. *Deukmejian* (1982) 30 Cal.3d 638, 658, fn. 15 [180 Cal.Rptr. 297, 639 P.2d 939] [rejecting bifurcated primary].)

The Secretary observes that preparing for elections is a complex and "sequential" process, requiring various tasks be performed before others may begin, including identifying the various district boundaries, developing county election precincts, assigning such districts to all registered voters, designing ballot styles, printing ballots, providing polling places, and training precinct workers. Early delays in one function can impact all other functions. As the Secretary points out, the need to know precise district boundaries "is at the front end of the process . . . ."

■ The Secretary proposes the following procedure for the timely implementation of reapportionment plans consistent with the timetable we outlined in *Wilson I*. As will appear, her proposal involves an initial, "preliminary," reliance by the counties and others on the Masters' recommended

but unapproved plans, and assumes we will ultimately approve those plans with only minor changes. We set forth the essential points of her proposal as follows:

1. *Masters' plans immediately available to counties*—The Secretary asks that we make the Masters' recommended plans available to county election officials as soon as available (on or before November 29), "in a computer-readable electronic medium with supporting maps and hard copy." We accept this proposal. *Wilson I* contemplates that once filed with us, the Masters' plans will become available for inspection by any interested persons. (See *supra, ante,* at p. 474.) We are further informed that the plans can be placed in a "computer-ready" format.

2. *Submit Masters' plans for preclearance*—The Secretary next proposes to submit the recommended plans to the United States Department of Justice "on an informational basis" for eventual preclearance under the Voting Rights Act (42 U.S.C. § 1971 et seq.), immediately on filing them with us. This aspect of the proposal also seems sound, based on the reasonable assumption that the appropriate federal agencies will cooperate with the Secretary in accelerating the preclearance process to accommodate the evident time pressures.

3. *Submit Masters' plans to counties for encoding*—On the filing of the plans with us, the Secretary will immediately direct county election officials to begin encoding the Masters' recommended plans into their computer files. This approach is consistent with that taken in 1981, when the Secretary instructed county officials to encode the Legislature's newly adopted district lines prior to our decision actually approving those lines. (See *Assembly* v. *Deukmejian, supra,* 30 Cal.3d at p. 658.)

4. *Postpone period for gathering "in lieu" signatures*—The Secretary will direct county election officials to postpone issuing petitions for gathering signatures in lieu of filing fees (ordinarily commencing on December 27) until we file our opinion designating the proper district lines. Again, this proposal is consistent with the procedure followed in *Assembly* v. *Deukmejian, supra,* 30 Cal.3d at pages 678-679.

5. *File our opinion by January 28, 1992*—The Secretary suggests January 28 as the deadline for filing our opinion, in light of the complex process which must follow, as outlined above. Again, the choice of this date is consistent with our practice in *Assembly* v. *Deukmejian, supra,* 30 Cal.3d 638. There, we likewise filed our opinion on January 28, 1982, setting district lines for the June 1982 primary. It is our hope and expectation that the Masters' plans will be generally acceptable to the court and that the

Secretary's suggested January 28 deadline can be met. The court, however, must retain the right to make whatever changes we feel appropriate to conform the recommended plans to the applicable criteria set forth in *Wilson I.*

6. *Other election deadlines postponed and readjusted*—The Secretary will direct county officials that the first day for circulating in lieu petitions, for filing declarations of intent for legislative office, and for filing declarations of candidacy and nomination papers for legislative and congressional seats, will be February 10, 1992. According to the Secretary, this postponement would give prospective candidates and election officials "a few days [from the January 28 opinion-filing deadline] to identify district boundaries and prepare for the commencement of the nominating period."

The Secretary will likewise direct that nomination papers be filed by each candidate "provisionally," subject to the submission of sufficient signatures by March 6, the close of the nomination period. In addition, candidates submitting in lieu signatures will have until March 16 to make up any deficiencies arising from invalid signatures. The number of needed signatures "would be reduced proportionately to the number of days by which the circulation period was abbreviated due to the adjustment of these dates."

As outlined above, we believe that the Secretary's recommendations are generally sound, and we direct her to take whatever steps are necessary and appropriate to carry them out, including the appropriate adjustment of election deadlines as herein discussed, subject to our reserved power to make appropriate changes in the plans ultimately submitted by the Masters.

In addition, as we stressed in *Wilson I,* if the Legislature is able to enact valid reapportionment plans "in time for the 1992 elections," we would entertain an application to dismiss these proceedings. (*Supra, ante,* at pp. 473-474.)