# IN THE SUPREME COURT OF CALIFORNIA

LEGISLATURE OF THE STATE OF CALIFORNIA,
Petitioner,

v.

ALEX PADILLA, as Secretary of State, etc.,
Respondent.

S262530

July 17, 2020

Justice Kruger authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu, Cuéllar, and Groban concurred.

# LEGISLATURE OF THE STATE OF CALIFORNIA v. PADILLA

## S262530

Opinion of the Court by Kruger, J.

Every 10 years, following the federal census, new maps must be drawn establishing the boundaries of the state's congressional, Assembly, Senate, and Board of Equalization districts. California law assigns the task of redistricting to the Citizens Redistricting Commission, which draws new maps based on the federal census data. The law also specifies a series of fixed deadlines for the Commission to solicit public input on its work and finalize updated maps for the next round of elections. As a result of the current COVID-19 pandemic, however, the federal Census Bureau has announced that census data collection and processing will be delayed. Under the Census Bureau's modified timeline, the data required to draw new district maps will not be released to the states in time for the Commission to meet the redistricting deadlines set forth in California law.

In view of the anticipated delay and to ensure that the Commission will be able to perform its redistricting function in time for the 2022 elections, the Legislature has filed an emergency petition for a peremptory writ of mandate seeking relief from the deadlines set by California law. The Secretary of State and the Commission have joined in the Legislature's request. We issued an order notifying the parties of our intent to issue a peremptory writ of mandate in the first instance. (See

*Palma v. U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171.)
We now grant the petition and issue the writ.

## I.

At the start of each decade, the federal government conducts a national census. Beginning on April 1 of the census year, the United States Census Bureau collects population and demographic data for the entire country. (13 U.S.C. § 141(a).) Within one year of this date, the Census Bureau must deliver these census data to each state for purposes of drawing new districts for the United States Congress, state legislatures, and other bodies of government. (*Id.*, § 141(c).) At that point, each state begins its redistricting process. The goal of redistricting is to craft new district maps that reflect current population numbers, to ensure compliance with the constitutional one-person, one-vote rule. (See, e.g., *Evenwel v. Abbott* (2016) ___ U.S. ___, ___ [136 S.Ct. 1120, 1123–1124]; Cal. Const., art. XXI, § 2, subd. (d)(1).)

In California, the redistricting process begins with the Legislature preparing a dataset that combines the federal census data with voter registration data and historical statewide election results. (Gov. Code, § 8253, subd. (b).) The Legislature then provides this dataset to the Citizens Redistricting Commission, an independent panel of 14 Californians of different party affiliations that is tasked with drawing new maps for the state's congressional, Assembly, Senate, and Board of Equalization districts. (Cal. Const., art. XXI, § 2.) The Commission was first created with the passage of Proposition 11 in 2008, which transferred the power to draw Assembly, Senate, and Board of Equalization districts from the Legislature to the newly formed Commission; two years later,

voters passed Proposition 20, which expanded the Commission's responsibilities to include congressional redistricting. Under the California Constitution, as amended by these two initiatives, the Commission must conduct an open and transparent redistricting process that allows public comment on draft maps produced by the Commission. (Cal. Const., art. XXI, § 2, subd. (b); Gov. Code, § 8253.) To carry out these duties, the Commission typically begins its work even before the census data are delivered to the state. As the chair of the previous redistricting commission explains in a declaration submitted to this court, this preliminary work includes arranging public hearings, soliciting public participation, and hiring staff and consultants.

State law sets forth deadlines by which the Commission must release draft maps for public comment and later, approve and certify final maps to the Secretary of State. The Government Code provides that the Commission must release at least one set of draft maps for public comment by July 1 of the year following the census year. (Gov. Code, § 8253, subd. (a)(7) ["Public comment shall be taken for at least 14 days from the date of public display of the first preliminary statewide maps of the congressional, State Senatorial, Assembly, and State Board of Equalization districts, which shall be publicly displayed no later than July 1 in each year ending in the number one."].) The California Constitution provides that the Commission must then approve and certify final maps to the Secretary of State by August 15 of the year following the census year. (Cal. Const., art. XXI, § 2, subd. (g) ["By August 15 in 2011, and in each year ending in the number one thereafter, the commission shall approve four final maps that separately set forth the district boundary lines for the congressional, Senatorial, Assembly, and

State Board of Equalization districts. Upon approval, the commission shall certify the four final maps to the Secretary of State."].)

The maps are subject to referendum under the ordinary procedures for placing an enactment on the ballot for a popular vote under the Constitution. (Cal. Const., art. XXI, § 2, subd. (i); *id.*, art. II, § 9.) If the Commission does not approve a final map by the requisite votes, or if voters disapprove a map in a referendum election, the Constitution provides that the Secretary of State "shall immediately petition the California Supreme Court for an order directing the appointment of special masters" to adjust district boundaries using the census data. At that point, the court becomes responsible for approving and certifying the special masters' map to the Secretary of State. (*Id.*, art. XXI, § 2, subd. (j); see also *id.*, § 3, subd. (b)(1).)

This year, the usual order of redistricting operations has been upended by the COVID-19 pandemic, a public health crisis caused by a newly discovered coronavirus that has spread rapidly around the globe, on a scale not seen in a century. In response to the crisis, the Governor of California declared a state of emergency on March 4, and the President of the United States proclaimed a national emergency under federal law on March 13.[1] As infection rates rose across California and the United

---

[1] Office of Governor Gavin Newsom, Proclamation of a State of Emergency (Mar. 4, 2020) <https://www.gov.ca.gov/wp-content/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf> (as of July 17, 2020); The White House, Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (Mar. 13, 2020) <https://www.whitehouse.gov/

States, governments issued stay-at-home orders drastically curtailing daily activities in an attempt to limit the spread of the virus.

On April 13, the United States Secretary of Commerce announced that the Census Bureau had halted its field operations due to the pandemic. The agency adopted a phased approach to resuming the collection of census data in the weeks and months that followed. As a result, the Census Bureau predicted that its delivery of census data to the states would be delayed by up to four months. Because the current March 31, 2021, deadline for releasing federal census data to the states is set by federal statute, the Census Bureau has asked the United States Congress to authorize 120 additional days — i.e., until July 31, 2021 — to deliver the data. To date, the United States House of Representatives has passed one bill authorizing this four-month extension; additional bills containing similar authorizations have been introduced in both houses. (H.R. No. 6800, 116th Cong., 2d Sess., Div. G, tit. II, § 70201, pp. 771–772 (2020) bill passed in House May 15, 2020; H.R. No. 7034, 116th Cong., 2d Sess., § 2, p. 3 (2020) as introduced May 27, 2020; Sen. No. 4048, 116th Cong., 2d Sess. (2020) as introduced June 23, 2020.)

On June 4, the Legislature filed an emergency petition in this court seeking a peremptory writ of mandate that would effectively grant the Commission equivalent four-month extensions to release draft maps for public comment and to

presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak> (as of July 17, 2020). All Internet citations in this opinion are archived by year, docket number, and case name at <https://www.courts.ca.gov/38324.htm>.

approve and certify final maps. Specifically, the Legislature seeks a writ extending the date by which the Commission must release draft maps for public comment from July 1, 2021, to November 1, 2021, and requiring the Secretary of State to accept the final Commission redistricting maps by December 15, 2021. The Legislature has no power to change these deadlines by statute: The deadline for the release of the draft maps is set forth in a state statute that the Legislature is prohibited from amending either this year or next, and the deadline for the approval of final maps is specified in the California Constitution. (Gov. Code, § 8251, subd. (c)(5) [the Legislature cannot amend any statute governing the Commission's work in years that end in 9, 0, or 1]; Cal. Const., art. XXI, § 2, subd. (g).) According to the Legislature, it has filed this emergency petition because, without the requested relief, the Legislature's only alternative will be to ask voters to enact a constitutional amendment that alters the Commission's deadlines for purposes of the 2020 redistricting cycle. The Legislature reports that the last day that it can pass a bill placing a constitutional amendment on the November ballot is July 26, 2020.

In response to the Legislature's petition, we sought preliminary oppositions from the Commission and the Secretary of State. Both filed preliminary responses supporting the Legislature's request.[2] Shortly thereafter, we issued a *Palma*

---

[2] Pursuant to state statute, the Commission is created by August 15 of each census year. (Gov. Code, § 8252, subd. (g); see also Cal. Const., art. XXI, § 2, subd. (a) [constitutional requirement that the Commission be created by December 31 of each census year].) Because the 2020 Commission had not been formed at the time our orders were filed, the 2010 Commission filed responses.

notice advising the parties that we might issue a peremptory writ of mandate in the first instance extending the time limits for the Commission to release draft and final maps and inviting the Commission and the Secretary of State to file any formal oppositions by June 29. (*Palma v. U.S. Industrial Fasteners, Inc., supra,* 36 Cal.3d 171; see *Lewis v. Superior Court* (1999) 19 Cal.4th 1232.) Both the Commission and the Secretary of State again filed statements supporting the Legislature's request.

In its request, the Legislature invokes our authority to issue an extraordinary writ under article VI, section 10 of the California Constitution, which grants this court original jurisdiction in proceedings for extraordinary mandamus relief. We have previously exercised this jurisdiction to consider and grant appropriate relief when necessary to the orderly functioning of our electoral system, and it is undisputed that we have the same authority here. (*Vandermost v. Bowen* (2012) 53 Cal.4th 421, 451–453.) For the reasons explained below, we grant the Legislature's petition and issue a peremptory writ of mandate adjusting the relevant deadlines in accordance with the forecasted delay in the Census Bureau's release of the federal census data necessary to draw the new district maps.[3]

## II.

The first deadline faced by the Commission is the July 1, 2021, deadline for displaying the first preliminary statewide maps for public comment. (Gov. Code, § 8253, subd. (a)(7).) Because of the COVID-19 pandemic, the Census Bureau has announced that it anticipates moving its scheduled deadline for

---

[3] The Legislature's request for judicial notice, which was filed in connection with its emergency petition for a writ of mandate, is granted.

releasing the federal census data needed to draw the maps to July 31, 2021 — nearly a month after the Commission's statutory deadline for publishing the draft maps. Indeed, as a practical matter, the delay is even more substantial than it might at first seem. The Legislature reports that the Commission cannot begin the process of creating the maps until the Legislature has first built the redistricting database for the Commission to use. (*Id.*, § 8253, subd. (b).) In a declaration submitted with the Legislature's petition, the director of the database explains that it takes approximately one month to create this database after the state receives the census data. This means that if the census data are not delivered until July 31, 2021, then the earliest the Commission could begin drawing maps would be August 31, 2021 — fully two months after the statutory deadline for the Commission to publicly release the first round of draft maps.

In other words, the Census Bureau's adjusted timeline for release of the census data will make it impossible for the Commission to meet the statutory July 1 deadline for release of the first preliminary statewide redistricting maps. The Legislature, Secretary of State, and Commission all contend that, given the extraordinary and unforeseen circumstances that have rendered compliance with the deadline impossible, the proper remedy is for this court to extend the deadline and thereby preserve the intended operation of the statutory framework. We agree, and we do so here.

We comprehensively discussed our power to grant the kind of relief the Legislature seeks in *Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607 (*Kopp*). In that case, we addressed a challenge to the constitutionality of a suite of voter-enacted statutes that governed the financing of state and local political

campaigns. (*Id.* at p. 614.) After holding certain statutes were unconstitutional as written, we considered whether, instead of invalidating the statutes, we could reform the statutes to preserve them. (*Id.* at p. 615.) We explained that "[u]nder established decisions of this court and the United States Supreme Court, a reviewing court may, in appropriate circumstances, and consistently with the separation of powers doctrine, reform a statute to conform it to constitutional requirements in lieu of simply declaring it unconstitutional and unenforceable. The guiding principle is consistency with the Legislature's (or, as here, the electorate's) intent." (*Ibid.*) "[A] court may reform a statute to satisfy constitutional requirements if it can conclude with confidence that (i) it is possible to reform the statute in a manner that closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred such a reformed version of the statute to invalidation of the statute." (*Ibid.*)

In *Kopp*, we concluded that the statutes in question could not be reformed consistent with the intent of the voters in enacting the statutes. (*Id.* at p. 671.) But in the years since, we have applied *Kopp* to reform statutes where it was feasible to do so in a manner that would effectuate the clearly articulated policy judgments of the enactors. (See, e.g., *Property Reserve, Inc. v. Superior Court* (2016) 1 Cal.5th 151, 208–209 [reforming statute to remedy a constitutional flaw by providing property owners the right to a jury trial in precondemnation proceedings].)

In *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231 (*Matosantos*), we applied *Kopp* to a situation in which a statute could not be implemented as written because

circumstances had made it impossible for the statute to be carried out in accordance with the deadlines written into it.  In *Matosantos*, we had partially stayed the implementation of two statutes pending our review of a challenge to their validity.  (*Id.* at p. 274.)  After upholding the validity of one of the two statutes, we recognized that several "critical deadlines" in the statute had passed and could no longer be met.  (*Ibid.*)  "This impossibility," we said, "ought not to prevent the Legislature's valid enactment from taking effect."  (*Ibid.*)  In situations like these, we explained, the standard from *Kopp* applies for deciding whether a statutory deadline can be reformed:  "Reformation is proper when it is feasible to do so in a manner that carries out those policy choices clearly expressed in the original legislation, and when the legislative body would have preferred reform to ineffectuality."  (*Matosantos*, at p. 274; see *id.* at p. 275.)  "By exercising the power of reform . . . we may as closely as possible effectuate the Legislature's intent and allow its valid enactment to have its intended effect."  (*Id.* at p. 274.)  In other words, the court has the inherent authority to reform a statute in situations where *impossibility* would have the same effect as invalidity, preventing the statute from being carried out in accordance with its literal terms, but only if the court can do so consistent with the enactors' intent.  In *Matosantos*, we extended several statutory deadlines by the duration of the court's stay to "retain the relative spacing of events originally intended by the Legislature and simplify compliance for all affected parties." (*Id.* at p. 275.)  This included deadlines that had passed during the stay as well as future deadlines that needed to be adjusted to maintain the sequence of events spelled out in the statute. (*Ibid.*; see also *Briggs v. Brown* (2017) 3 Cal.5th 808, 861–862 [exercising the court's "inherent power of reformation to revise

the effective date of stayed legislation in order to avoid problems of compliance with statutory deadlines" affected by the stay].)

The situation we confront here is similar. Because the release of the federal census data will be delayed by four months under the Census Bureau's plan, it will be impossible for the Commission to meet the July 1, 2021, deadline for displaying the first round of draft maps for public comment. (Gov. Code, § 8253, subd. (a)(7).) What we must ask, then, is whether this deadline can be reformed in a manner that closely approximates the framework designed by its enactors, and whether the enactors would have preferred the reform to the effective nullification of the statutory language. (*Matosantos*, *supra*, 53 Cal.4th at p. 275.) The answer to both questions is yes.

The basic purpose of the deadline set out in Government Code section 8253 is to ensure the timely display of draft redistricting maps to the public so that Californians can voice their views about the proposed district boundaries. The statute was first enacted as part of Proposition 11 — the 2008 ballot initiative that created the Commission, outlined a selection process for its members, and assigned it the responsibility of drawing the boundaries for the State Assembly, Senate, and Board of Equalization districts. (Voter Information Guide, Gen. Elec. (Nov. 4, 2008) analysis of Prop. 11 by Legis. Analyst, pp. 70–71; *id.*, text of Prop. 11, pp. 137–140.) As relevant here, Proposition 11 amended article XXI of the Constitution to specify that the Commission shall "conduct an open and transparent process enabling full public consideration of and comment on the drawing of district lines." (Cal. Const., art. XXI, § 2, subd. (b)(1).) This process is described in Government Code section 8253, which guarantees public access to the redistricting process by requiring open meetings, public notice for each

meeting, and procedures for public input on the proposed maps. (Gov. Code, § 8253, subd. (a).) Additionally, the statute directs the Legislature to establish procedures to provide the public with access to redistricting data and mapping software to facilitate participation in the process. (*Id.*, subd. (b).) The framework reflects a policy judgment that the public should have the opportunity to be involved throughout the redistricting process. (*Vandermost v. Bowen, supra,* 53 Cal.4th at p. 445 [Cal. Const. and statutes "establish a public redistricting process"].) And public comment is typically robust: In the 2010 redistricting cycle, the Commission held 34 public hearings in 32 cities, reviewed more than 2,000 written submissions, and received input from more than 20,000 entities and individuals.

Of course, for the public to provide feedback on proposed district boundaries, the Commission must first make its work available for public review. As initially passed by the voters in 2008, subdivision (a)(7) of Government Code section 8253 stated, in relevant part: "The commission shall display the maps for public comment in a manner designed to achieve the widest public access reasonably possible. Public comment shall be taken for at least 14 days from the date of public display of any map." (Voter Information Guide, Gen. Elec. (Nov. 4, 2008), *supra,* text of Prop. 11, p. 140.) In 2012, the Legislature amended this language to read, as relevant here: "Public comment shall be taken for at least 14 days from the date of public display of the *first preliminary* statewide maps of the congressional, State Senatorial, Assembly, and State Board of Equalization districts, which shall be publicly displayed *no later than July 1 in each year ending in the number one*. The commission shall not display any other map for public comment during the 14-day period. . . . Public comment shall be taken for

at least seven days from the date of public display of any subsequent preliminary statewide maps and for at least three days from the date of public display of any final statewide maps." (Gov. Code, § 8253, subd. (a)(7), as amended by Stats. 2012, ch. 271, § 4, italics added.) As an Assembly bill analysis explained, the requirement "guarantee[d] that the public will have the ability and time to review the maps and respond to the Commission" at least six weeks before the August 15 deadline for the final maps set by the California Constitution. (Assem. Com. on Elections & Redistricting, Analysis of Sen. Bill No. 1096 (2011–2012 Reg. Sess.) July 3, 2012, p. 5.) The amendments also limited the 14-day public display requirement to the first set of draft maps released by the Commission, as opposed to all of the draft maps. (*Id*. at pp. 1–2.) The deadline ensured the public would be given adequate time to comment on at least one set of draft maps (and the Commission would have time to respond) before the August 15 deadline.

In short, the July 1 deadline for displaying preliminary maps was chosen to ensure that the public has the opportunity to provide input on the proposed maps before the Commission certifies them as final. But if the Census Bureau does not deliver the federal data until July 31, 2021, as it anticipates, it will be impossible for the Commission to comply with the July 1 deadline. The remedy the Legislature seeks is both temporary and limited in nature: a one-time adjustment of the statutory deadline, for purposes of this redistricting cycle, in accordance with the adjustment to the schedule for releasing the federal census data. By granting this limited remedy, we effectuate the policy judgment underlying the provision and preserve the public's right to provide input on electoral district maps before those maps are finalized. We consider it clear that the enactors

13

would have preferred this deadline be adjusted — and the opportunity for public comment on the preliminary maps preserved — to effectively eliminating the public comment process because of extraordinary circumstances that make compliance with the statutory deadline impossible.

This brings us to the second relevant deadline faced by the Commission: the August 15, 2021, deadline for approving and certifying final redistricting maps to the Secretary of State. (Cal. Const., art. XXI, § 2, subd. (g).) If a delay in the federal data makes the July 1 deadline for the draft maps impossible to meet, it stands to reason that the deadline for the final maps, which the Constitution sets at just six weeks later, will be impossible to meet as well. If the census data are sent to the states on July 31, 2021, and the Legislature takes one month to prepare the dataset to be used for redistricting, the Commission cannot begin its work until September 2021 at the earliest — well after the constitutionally prescribed August 15, 2021, deadline. Allowing a period for public comment, as the statutory scheme envisions, will result in even greater delay.

As we explained above, this court's precedent establishes that a court may reform statutory deadlines to effectuate the enactors' clearly articulated policy judgments when it is feasible to do so and when the enacting body clearly would have preferred reformation to invalidation. (*Kopp*, *supra*, 11 Cal.4th at p. 615; *Matosantos*, *supra*, 53 Cal.4th at pp. 274–275.) Although the August 15 deadline is set by a constitutional amendment passed by the voters, rather than by statute, we see no reason why the same principles would not permit a one-time adjustment of the deadline given the extraordinary circumstances we confront here.

14

The August 15 deadline was enacted against the backdrop of the federal deadline that requires the Census Bureau to transmit census data to the states by March 31 of the year following the census. (13 U.S.C. § 141(c).) We presume that the voters who approved the initiatives establishing the Commission and the deadline for the approval of the final redistricting maps were aware of this federal deadline, and that the choice of the August 15 date reflects their judgment about the amount of time that is ordinarily appropriate for an effective redistricting process after the necessary federal census data are released. (See *In re Lance W.* (1985) 37 Cal.3d 873, 890, fn. 11; Voter Information Guide, Gen. Elec. (Nov. 4, 2008), *supra*, text of Prop. 11, p. 138 [setting the deadline for the Commission's final maps as Sept. 15 of the year following the census]; Voter Information Guide, Gen. Elec. (Nov. 2, 2010) analysis of Prop. 20 by Legis. Analyst, pp. 18–19; *id.*, text of Prop. 20, p. 96 [changing the deadline for the approval of final maps from Sept. 15 to Aug. 15].)

We consider it clear from the constitutional framework that, confronted with extraordinary pandemic-related federal delay, the enactors of article XXI, section 2, would have preferred shifting the date for approval of the Commission's final maps to the available alternatives. It is true that the Constitution provides for certain scenarios in which the Commission is unable to approve a final map. In that event, the Secretary of State must petition this court for an order appointing special masters to adjust district boundaries instead. (Cal. Const., art. XXI, § 2, subd. (j).) But by its terms, the Constitution reserves this backstop for situations in which the Commission fails to approve a final map because it cannot muster "the requisite votes" (or voters disapprove of a final map

by referendum). (*Ibid.*) It is not designed to address the situation here, where the Commission will be unable to complete its work by the prescribed deadline because of extraordinary events outside of its control. There are, moreover, strong reasons to believe voters would not have preferred deploying this backstop — and thereby transferring primary responsibility for redistricting from the Commission to this court — to employing the usual redistricting procedures on an adjusted timeline. The voters enacted Propositions 11 and 20 to transfer the responsibility of drawing new district maps from the Legislature to an independent panel of citizens. (Voter Information Guide, Gen. Elec. (Nov. 4, 2008), *supra*, analysis of Prop. 11 by Legis. Analyst, pp. 70–71; see *Wilson v. Eu* (1991) 54 Cal.3d 471, 473.) In so doing, the voters tasked this court with redistricting only as a matter of last resort. (Cal. Const., art. XXI, § 2, subd. (j).) For this court to undertake to draw maps in the first instance would both displace the role voters envisioned for the Commission and preclude opportunities for the public to participate in the process as the voters intended. (See Cal. Const., art. XXI, § 2, subd. (b)(1) [instructing the Commission to "conduct an open and transparent process enabling full public consideration of and comment on the drawing of district lines . . ."].) Adjusting the August 15 deadline, by contrast, gives effect to the voters' intent that the Commission play the lead role in drawing new district maps, with input from the public received in a timely manner.

As always, our goal in fashioning such a remedy is to disturb the original language of the provision as little as possible. (*Kopp, supra*, 11 Cal.4th at p. 661.) The Legislature proposes that, for purposes of the 2020 redistricting process, we adjust the deadlines to account for the anticipated federal delay

— here, four months. The Commission and the Secretary of State concur. We agree this adjustment is appropriate. The state law provisions setting forth the deadlines for the Commission to release draft maps and approve final maps were designed to ensure that the Commission can take the necessary steps to prepare for a public redistricting process with some degree of certainty about when those steps will occur. The Commission's forecasted delay runs the risk of rendering these provisions hollow. As the Legislature and the Secretary of State explain, without clear deadlines, the Commission will be ill equipped to plan and coordinate the public process of drawing new maps. A four-month adjustment of these deadlines addresses this issue while leaving sufficient time for the maps to be finalized in advance of the 2022 primaries.[4] For these reasons, we agree that a four-month adjustment of the deadlines for the release of the draft maps and the approval of the final maps is appropriate.

We recognize, however, that the dynamic nature of the global pandemic may lead the federal government to further postpone its delivery of the census data. In the event of further federal delay, we conclude the relevant state deadlines should be shifted accordingly, for the reasons outlined here. Thus, while we today grant a minimum four-month adjustment to the relevant deadlines, we also order that the deadlines be further extended by the length of any additional delay in release of the federal census data beyond four months. In the event that an

---

[4]     We note that legislation is currently pending to move the March 2022 primary elections to June 2022 in light of the pandemic. (Sen. Bill No. 970 (2019–2020 Reg. Sess.) § 1, p. 2, as introduced Feb. 11, 2020.)

additional extension of time risks interference with the timeline for conducting elections, appropriate parties may seek further relief in this court. Conversely, should the federal government release the census data sooner than July 31, 2021, the Commission should make every effort to expedite its process and release the preliminary and final maps in advance of the deadlines set forth in this order.

Finally, we again emphasize that these adjustments to the relevant deadlines are limited to this redistricting cycle and these extraordinary circumstances. It is these circumstances that necessitate the remedy we authorize today: a public health crisis that has compelled declarations of emergency by both the President and the Governor, and that has compelled the federal government to pause the decennial census and seek congressional authorization for an extension of its own deadline. And the remedy we authorize is a narrow one: a one-time adjustment to the deadlines, to enable the relevant constitutional and statutory redistricting provisions otherwise to operate as written and intended.

## III.

We grant the Legislature's petition and issue a peremptory writ of mandate as follows:

(i)     The Commission is directed to release the first preliminary statewide maps for the congressional, State Senatorial, Assembly, and State Board of Equalization districts for public display and comment no later than November 1, 2021, notwithstanding Government Code section 8253, subdivision (a)(7).

(ii)    The Commission is directed to approve and certify the final statewide maps to the Secretary of State by no later than December 15, 2021.  If the maps are approved and certified by this date, the Secretary of State shall consider the maps approved and certified consistent with the requirements of article XXI, section 2, subdivision (g) of the California Constitution.

If the federal government transmits the census data to the state later than July 31, 2021, the number of days of additional delay shall be considered to be the "additional federal delay."  In the event additional federal delay occurs, the Commission is directed to release the first preliminary statewide maps by no later than the date following November 1, 2021, that extends the November 1 deadline by the additional federal delay, and to approve and certify the final maps by no later than the date following December 15, 2021, that extends the December 15 deadline by the additional federal delay.

In the event the federal government transmits the census data to the state before July 31, 2021, the Commission should make every effort to expedite its process and release the

preliminary and final maps in advance of the deadlines set forth above.

This decision shall be final upon the filing of this opinion. (Cal. Rules of Court, rule 8.490(b)(2)(A); *Ng v. Superior Court* (1992) 4 Cal.4th 29, 34, fn. 1.)

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Legislature of the State of California v. Padilla

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S262530
**Date Filed:** July 17, 2020

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Olson Remcho, Robin B. Johansen and Thomas A. Willis for Petitioner.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Anthony R. Hakl and P. Patty Li, Deputy Attorneys General, for Respondent Alex Padilla.

Marian M. Johnston for Respondent Citizens Redistricting Commission.

Nielsen Merksamer Parrinello Gross & Leoni and Marguerite Mary Leoni for Charles Munger, Jr., as Amicus Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

No oral argument.